1  DANIEL S. BROME (SBN 278915)
   dbrome@nka.com
2  NICHOLS KASTER, LLP
   235 Montgomery St., Suite 810
3  San Francisco, CA 94104
   Telephone: (415) 277-7235
4  Facsimile: (415) 277-7238

5  REENA I. DESAI (MN BAR #388311)*
   rdesai@nka.com
6  NICHOLS KASTER, PLLP
   4700 IDS Center, 80 South 8th Street
7  Minneapolis, MN 55402
   Telephone: (612) 256-3200
8  Facsimile: (612) 215-6870

9  CHRISTOPHER Q. DAVIS (NY BAR #4068680)*
   cdavis@workingsolutionsnyc.com
10 WORKING SOLUTIONS LAW FIRM, PLLC
   80 Broad Street, Suite 703
11 New York, NY 10004
   Telephone: (646) 430-7930
12 Facsimile:  (646) 349-2504

13 *Admitted *pro hac vice*

14 Attorneys for Plaintiff

15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19 ALBERT SIMIC, Plaintiff, on behalf of       Case No. 2:24-cv-08887-SK
   himself and all others similarly situated,
20                                             **PLAINTIFF'S NOTICE OF**
              Plaintiff,                       **UNOPPOSED MOTION AND**
21                                             **MOTION FOR PRELIMINARY**
        vs.                                    **APPROVAL OF CLASS AND**
22                                             **PRIVATE ATTORNEYS GENERAL**
   KASAMBA, INC.,                              **ACT (PAGA) REPRESENTATIVE**
23                                             **ACTION SETTLEMENT AND**
              Defendant.                       **CONDITIONAL CERTIFICATION OF**
24                                             **SETTLEMENT CLASS**
25                                             Date: September 10, 2025
26                                             Time: 10:00 a.m.
27                                             Place: Courtroom 540

28

---

## <u>NOTICE OF UNOPPOSED MOTION AND MOTION</u>

TO THE COURT AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiff's Unopposed Motion for Preliminary Approval of Class and PAGA Representative Action Settlement on September 3, 2025, at 10:00 a.m. in the Courtroom of the Honorable Steve Kim, located at  255 E. Temple Street, Courtroom 540, 5th Floor, Los Angeles, CA 90012. At the hearing, representative Plaintiff Albert Simic, through his attorneys and on behalf of all others similarly situated, will and hereby does move the Court to: preliminarily approve the Settlement Agreement; certify conditionally, for settlement purposes only, the class of employees described herein; name Nichols Kaster and Working Solutions Law Firm as Class Counsel, and Albert Simic as Class Representative, and Simpluris as the Claims Administrator; authorize the mailing of notice to the California Class; and schedule a final approval hearing date.

The Motion is based upon the Notice of Motion and Unopposed Motion for Preliminary Settlement Approval and Memorandum of Points and Authorities in Support Thereof; the supporting Declaration of Daniel S. Brome, Esq., (Brome Dec.) and accompanying exhibits including the Settlement Agreement attached as Exhibit 1 to the declaration; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Pursuant to Local Rule 5-4.3.4, Counsel for Plaintiff attests that counsel for Defendant, on whose behalf this filing is also submitted, concur in the filing's content and have authorized its filing.

Dated:  August 13, 2025

**Nichols Kaster, LLP**

By: _/s/ Daniel S. Brome_
Daniel S. Brome



Reena I. Desai
Attorneys for Plaintiff
ALBERT SIMIC, on behalf of
himself and all others similarly
situated

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL—CASE NO. 2:24-cv-08887-SK

**TABLE OF CONTENT**

I.     INTRODUCTION ................................................................................................ 1

II.    CASE BACKGROUND ....................................................................................... 1

III.   THE SETTLEMENT IS FAVORABLE FOR THE SETTLEMENT
       CLASS .............................................................................................................. 2

       A.     Gross Settlement Amount and Class Member Allocations ...................... 2

       B.     The Settlement Process Provides Fair Notice and the Scope of the
              Release is Appropriate ........................................................................... 4

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL .................... 5

       A.     The California Class Action Settlement Warrants Approval.................... 5

              1.    The Proposed Class Satisfies the Requirements of Rule
                    23(a) ............................................................................................ 5

                    i.     Numerosity ......................................................................... 6

                    ii.    Commonality ...................................................................... 6

                    iii.   Typicality ........................................................................... 7

                    iv.    Adequacy ........................................................................... 8

              2.    The Proposed Class Satisfies the Requirements of Rule
                    23(b)(3) ....................................................................................... 9

       B.     The Settlement Is Fair, Adequate, and Reasonable. .............................. 10

              1.    The Settlement Is Non-Collusive and Was the Product of
                    Extensive Negotiations Among Experienced Counsel................. 11

              2.    The Court Should Weigh the Strength of Plaintiff's Case
                    Against the Risk, Expense, Complexity and Likely Duration
                    of Further Litigation, and Risk of Maintaining Class Status
                    Through Trial. ........................................................................... 11

              3.    The Amount Offered in Settlement Weighs Strongly in
                    Favor of Preliminary Approval................................................... 13

              4.    The Extent of Discovery Completed and the Stage of the
                    Proceedings also Favors Preliminary Approval. ......................... 14

              5.    The Considerable Experience and Strongly Supportive
                    Views of Counsel Weigh in Favor of Preliminary Approval. ....... 14

6.    The Reaction of the Class Members to the Proposed Settlement. .................................................................15

7.    The Presence of a Government Participant. ........................15

8.    The Enhancement Award Should be Approved ................15

C.    The Court Should Preliminarily Approve the Fees and Costs. ......17

1.    The Percentage-of-the-Fund Method is Warranted Here. ...18

2.    The percentage requested is fair and reasonable. ...............18

3.    The Result Obtained for the Class and Similar Awards ......19

4.    Counsel's experience and skill and complexity of issues ...19

5.    Risk of litigation and contingent fees ...................................20

6.    The Court should approve costs of up to $25,000. ..............20

D.    The PAGA Allocation is Reasonable. ...............................................20

E.    The Court Should Approve the Administrator and *Cy Pres* Beneficiary. .................................................................22

V.    CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012).....................19

*Alexander v. FedEx Ground*, 2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) .............22

*Anchem Products v. Windsor*, 521 U.S. 591 (1997)........................................................8

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005)..............................................12

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).....................................................7, 8

*Arrellano v. XPO Port Serv. Inc.*, 2021 WL 6882163
    (C.D. Cal., Oct.8, 2021).......................................................................................14, 16

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431
    (E.D. Cal. 2013)...........................................................................................8, 9, 10, 17

*Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822
    (C.D. Cal. Jul. 14, 2014)...........................................................................................20

*Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942
    (N.D. Cal., Feb. 2, 2022) ..........................................................................................10

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245
    (N.D. Cal. 2015) ...........................................................................................................8

*Bernstein v. Virgin America, Inc., Inc.*, 2023 WL 7284158
    (N.D. Cal. Nov. 3, 2023)............................................................................................22

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...................................................17, 18

*Boyd v. Bank of Am.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...................16, 21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................15

*Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623
    (N.D. Cal. 2005) ...........................................................................................................6

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067
    (C.D. Cal. Jan. 7, 2010) .............................................................................................11

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)...........................5, 11

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ............... 6

*Cruz v. Sky Chefs*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ........................... 22

*Deaver v. Compass Bank*, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ........... 5, 19

*Eddings v. Health Net, Inc.*, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ............. 22

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ................................. 6

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862
   (N.D. Cal. 2007) ........................................................................... 17, 18

*Gong-Chun v. Aetna, Inc.*, 2012 WL 2872788 (E.D. Cal July 12, 2012) ................ 16

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) .................................... 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 7, 8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................. 6

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ............. 6

*Hendershot v. Ready to Roll Transportation, Inc.*,
   228 Cal.App.4th 1214 (2014) ......................................................... 6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................... 19

*In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ........................................................ 12

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988
   (9th Cir. 2010) ................................................................................ 17

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053
   (N.D. Cal. 2007) ........................................................................ 7, 9

*Johnson v. California*, 543 U.S. 499 (2005) ......................................................... 7

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D.Cal.,2009) ............... 17, 19

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ....................................... 18

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ......................... 18

*Lim v. Transforce, Inc.*, 2022 WL 17253907 (C.D. Cal., Nov. 15, 2022) ............... 10

vii

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........................................................................ 9

*Lusby v. GameStop, Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................. 5

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........... 10

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ........................................................................................ 22

*McEvoy v. Henry Industries, Inc.*, 2025 WL 1882846 (E.D. Cal., July 8, 2025) ................................................................................ 7, 9, 14

*Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896 (N.D. Cal. July 25, 2022) ........................................................................................ 21

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................... 22

*Murillo v. Pac. Gas & Elec.*, 266 F.R.D. 468 (E.D. Cal. 2010) ................................ 9

*Naranjo v. Spectrum Security Services, Inc.*, 15 Cal.5th 1056 (2024) .................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................................... 5

*Nelson v. Avon Products, Inc.*, 2017 WL 733145 (N.D. Cal., Feb. 24, 2017) .......... 14

*Nordstrom Com'n Cases*, 186 Cal.App.4th 576 (2010) ........................................... 21

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........... 5, 10

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................ 18

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) .............................................. 17, 18

*Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ............. 16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............... 12, 13, 14, 15

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ...................... 16

*Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ............. 11

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ................................................................................................... 16

*Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .......... 19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).............................................. 6, 16

*Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664 (2024) ............................................................ 21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)............................. 10

*Vazquez v. USM Inc.*, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016)......................... 22

*Viceral v. Mistras Grp. Inc.*, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017)............. 21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................. 17, 18

*White v. Experian Info. Sols., Inc.*, 2009 WL 10670553
 (C.D. Cal. May 7, 2009) ......................................................................................... 11

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001),
 *amended by* 273 F.3d 1266 (9th Cir. 2001) ........................................................... 10


**Statutes**

Fed. R. Civ. P. 23 ........................................................................................................ 4

**Rules**

Cal. Lab. Code § 226.................................................................................................... 5

Cal. Lab. Code. § 2699................................................................................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL—CASE NO. 2:24-cv-08887-SK

## I.    INTRODUCTION

Plaintiff seeks approval of a Rule 23 class action settlement that brings an efficient resolution to a case challenging Defendant's classification of Plaintiff and the putative Class as independent contractors. This settlement delivers an excellent result for the putative Class. It will pay participants approximately 95% of their damages for unpaid wages and reimbursement of expenses, all after accounting for an amount for the state for PAGA claims and attorneys' fees and costs. The case settled early in the litigation, with the Parties focusing their efforts on reaching a fair resolution instead of contentious litigation. The settlement brings prompt relief and warrants approval.

## II.    CASE BACKGROUND

Plaintiff initially filed this lawsuit in Los Angeles County Superior Court on September 9, 2024. Defendant removed the case to the Central District of California on October 15, 2024. (ECF No. 1.) This action was initially assigned to the Hon. John F. Walter, who issued a scheduling and case management order on November 12, 2024, setting a May 5, 2025, deadline to conduct mediation and the remaining case deadlines. (ECF No. 30.)  Plaintiff filed a First Amended Complaint on November 21, 2024, ECF No. 31, and the Parties consented to proceed before Magistrate Judge Kim on November 22, 2024. (ECF No. 33.)  Prior to Defendant answering the First Amended Complaint, the Parties filed a Stipulation to Stay all Deadlines Pending Mediation in an effort to conserve time and resources of the Parties and the Court. (ECF No. 36.) The Court granted the Stipulation on December 5, 2024. (ECF No. 37.) The Parties attended a full-day mediation session on April 24, 2025, and a follow-up session on May 13, 2025, with experienced California mediator Jill Sperber at Judicate West. As a result of the mediation sessions, the Parties fully executed a Memorandum of Understanding on May 20, 2025, and executed a comprehensive settlement agreement on August 4, 2025. (Ex. 1, Settlement Agreement.)

This case is brought on behalf of individuals who work or worked as online psychic readers ("Readers"). Using Defendant's website, Plaintiff and other Readers

provided services to customers; those customers paid Defendant (who then paid Readers) based on the length of the call or chat session. Defendant classifies the Readers as independent contractor and contends it paid them accurately according to the terms of their agreements, and that the independent contractor classification was proper. Plaintiff alleges, however, that Readers should have been treated as employees, and that Defendant's payment practices ran afoul of the Labor Code for Readers who worked in California. Specifically, Plaintiff contends that Defendant improperly deducted certain fees from the amounts paid to Readers, and that those platform fees constituted improper deductions from wages and/or business expenses that the employer should bear. Additionally, Plaintiff contends that Defendant's pay plan allowed Readers to work for free, in violation of California's minimum wage laws, since Readers get paid based on how much customers pay. For example, if a customer refused to pay for a session, the Reader might not receive pay, or when new customers received three free promotional minutes, Readers would lose those minutes of pay. Defendant denies these allegations.

In advance of mediation, Defendant produced detailed records for all California Readers. This data showed how many sessions were conducted by California Readers by phone or chat, how long those sessions lasted, and how they were paid. For most of the covered time period, the data showed the total length of the Readers' sessions as well as the amount of time that was paid; for some of the covered time period, the data only included the paid minutes. Using this data, Plaintiff's Counsel was able to calculate the number of allegedly unpaid minutes, capturing the unpaid three-minutes that were free for new clients and instances where the Reader was not paid, likely because the client did not pay for the call, whatever the reason.

## III. THE SETTLEMENT IS FAVORABLE FOR THE SETTLEMENT CLASS

### A. Gross Settlement Amount and Class Member Allocations

Under the proposed settlement, Defendant is expected to pay $1,400,000.00 (Ex. 1, ¶ 11). If additional Class Members are added, or if Class Members opt-out, and the allocation amounts exceed $50,000 in the aggregate, then the settlement will be increased or decreased proportionally. (*Id.* ¶ 29.) Plaintiff's Counsel will seek approval of attorneys' fees based on the Gross Settlement Amount. (*Id.* ¶ 11.)

The settlement contemplates a payment plan. If the settlement is approved, Defendant will make the Initial Payment of $1,000,000.00 within 30 days of final Court approval and judgement. (*Id.* ¶ 30.) Within 120 days after the Initial Payment, Defendant will make the Final Payment of $400,00.00. (*Id.* ¶ 30.)

The gross settlement amount includes:

- Administrative costs, estimated to be less than $6,500 (Ex. 1, ¶ 11);
- A Gross Settlement Amount of $1,400,000.00 to pay claims for all Class Members who do not submit timely and valid requests for exclusion. (*Id.* ¶ 18);
- Attorneys' litigation costs, estimated not to exceed $25,000. (*Id.* ¶ 11);
- Attorneys' fees equivalent to 25% of the amount that will ultimately be paid out. (*Id.* ¶ 11);
- An Enhancement Award of $10,000 to Plaintiff Simic, for his service to the Settlement Class. (*Id.* ¶ 32);
- PAGA Allocations of $10,000 total, with $6,500 to be distributed to the California's Labor Workforce Development Agency ("LWDA"). (*Id.* ¶ 34).

The settlement includes a Rule 23 settlement class of 32 Readers who will receive their allocation unless they submit a valid and timely request for exclusion.[1] The Parties agree the case can be settled on a class basis, although Defendant would

---

[1] California Readers included in the settlement are individuals Defendant identified as eligible class members (i.e., Readers who worked for Defendant in California since September 9, 2020) based on Defendant's data, and whose data Defendant produced in advance of mediation. (Ex. 1, ¶ 5.)

have contested class certification in litigation. (Ex. 1, ¶ 5.) The settlement payments will be divided between payments for wages and non-wages amounts, with 40% designated as of disputed unpaid wages and reported on an IRS Form W-2, and 60% designated as payment for liquidated damages and reported on an IRS Form 1099. (*Id*. ¶ 15.)

The distribution will be done fairly. All of the Net Settlement Amount will be allocated on a prorated basis to Settlement Class Members who did not opt out. (*Id*. ¶ 36.) The allocation formula is based on Plaintiff's Counsel's damages analysis with weighting for certain claims, penalties, and damages based on litigation risk. (*Id*.) This was provided to and approved by Defendant's Counsel. (*Id*. ¶ 36.)

**B.    The Settlement Process Provides Fair Notice and the Scope of the Release is Appropriate**

The Parties selected Simpluris as the Settlement Administrator, a reputable administrator with considerable experience administering this type of settlement. Plaintiff's Counsel will mail and email the notices (attached as Exhibit A to Exhibit 1), and the Settlement Administrator will create a website and process payments. (*Id*.¶ 42.)

The agreed-upon notice describes the litigation, the terms of the Settlement, and the respective options for eligible individuals to participate in, opt out, or object to the settlement, and informs them of their estimated allocation and the claims that they release through the settlement. (*Id*. ¶ 42.) The notice provides information regarding the basis of the allocations, the final approval hearing, and how class members may obtain more information about the settlement. (*Id*.)

When the Court grants final approval, Class Members will release only those California wage and hour claims asserted in Plaintiff's First Amended Complaint. (*Id*. ¶ 23.) Only the Named Plaintiff will execute a full, general release of all claims; his enhancement is consideration also for this general release. (*Id*. ¶ 20.) The time period covered by the releases is not open ended; instead, the releases run up to and include

4

the date of filing the motion for Preliminary Approval. (*Id*. ¶ 23). In other words, the claims being released are finite, and the value is not being diluted by the passage of time since mediation.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    The California Class Action Settlement Warrants Approval.

"Judicial policy strongly favors settlement of class actions." *Deaver v. Compass Bank*, 2015 WL 8526982, at *3 (N.D. Cal. Dec. 11, 2015) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve, but conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.* The Court should approve the settlement because the payments are substantial, and they represent a reasonable compromise of state law wage and hour claims.

The settlement also reflects compromise in that it avoids the uncertainty of continued litigation. Generally, "unless the settlement is clearly inadequate, its acceptances and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). This settlement avoids expenditures of resources for all Parties and the Court and provides a significant benefit over continued litigation: a "prompt, guaranteed recovery." *Lusby v. GameStop, Inc.*, 2015 WL 1501095, at *6 (N.D. Cal. Mar. 31, 2015). The Court should grant approval.

### 1.    The Proposed Class Satisfies the Requirements of Rule 23(a)

As an initial matter, the Court should certify the class. Where a class action is settled before class certification, the court must "peruse the proposed compromise to

5

ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In doing so, the court should address the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).

### i.    *Numerosity*

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold. *Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D 623, 628 (N.D. Cal. 2005). Instead, numerosity demands "examination of the specific facts of each case." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (citing *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "'[I]mpracticality' does not mean 'impossibility,' but only the difficult or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).

Here, the numerosity requirement is satisfied because joinder of all members of the proposed Rule 23 class is impracticable. According to Defendant's data, there are 32 California Class Members. (Brome Decl. ¶ 4.) Bringing all these individuals before the Court would be impractical. *See Hendershot v. Ready to Roll Transp., Inc.*, 228 Cal.App.4th 1214, 1222-23 (2014). Judicial economy is also served by resolving the class claims through class settlement. Particularly given that the Parties have reached a settlement that provides substantial relief to Class Members while preserving their option to opt-out and pursue their claims individually, certifying the claims for settlement purposes limits the expenditure of judicial resources.

### ii.    *Commonality*

In the Ninth Circuit, "Rule 23(a)(2) has been constructed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

6

of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality is typically satisfied where plaintiffs challenge "a system-wide practice or policy that affects all the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005). Whether Class Members were subject to a given compensation policy, and whether that policy was uniformly applied and unlawful are common questions of law and fact that may satisfy Rule 23(a)(2). *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065–68 (N.D. Cal. 2007) (finding commonality and predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

Here, the class is principally bound by the question of whether Defendant improperly classified Readers as independent contractors, and therefore failed to pay hourly wages when customers did not pay, and improperly deducted platform fees from Readers' wages. Plaintiff alleges other Readers were paid on the same pay plan and were harmed in the same way by Defendant's common policies. Plaintiff contends the additional class claims are derivatives of these common independent contractor and unpaid wage questions, and the answers do not depend on an individualized analysis and will drive the outcome for all class members. Accordingly, the commonality requirement is satisfied. *E.g.*, *McEvoy v. Henry Industries, Inc.*, 2025 WL 1882846, at *4 (E.D. Cal., July 8, 2025) (commonality satisfied for preliminary approval since key question of whether all plaintiffs were improperly classified as independent contractors could be answered in one stroke).

### iii. Typicality

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied where the

class members' claims arise from the same course of events, and class members make similar legal arguments. *Armstrong*, 275 F.3d at 868.

Here, the Named Plaintiff's claims are typical of Class Members. Plaintiff worked in California as a Reader, was classified as an independent contractor, was not paid for certain time worked and had platform fees deducted from his pay. Plaintiff and the class were all subject to Defendant's alleged policy and practice of improperly classifying Readers as independent contracts, and thus failing to pay appropriate compensation. Plaintiff's claims are co-extensive with the class members' because Plaintiff and class members all allege they "were all Defendant's employees, working under the same pay practices and the same company-wide employment policies." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013). The claims are typical.

### iv.    Adequacy

The adequacy factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class; and (2) that Plaintiff and competent counsel will vigorously prosecute the action. *Hanlon*, 150 F.3d at 102-21; Fed R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the class. There are no conflicts of interest within the proposed settlement that would pit Plaintiff against Class Members. Plaintiff is "part of the class and possess the same interest[s] and suffer the same injur[ies] as class members." *Anchem Products v. Windsor*, 521 U.S. 591, 625-26 (1997). Moreover, the settlement provides payment to the named Plaintiff on the same formula as class members. While the Settlement provides for a modest Service Award ($10,000) for the Named Plaintiff, such awards do not defeat adequacy. *Bellinghausen v. Tractor Supp. Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015).

Additionally, Plaintiff and Plaintiff's Counsel satisfy the requirement of vigorous prosecution because competent counsel reached the decision to settle this matter after a robust exchange of information and mediation with a skilled mediator.

The Court may properly conclude "that plaintiff's counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire class." *Murillo v. Pac. Gas & Elec.*, 266 F.R.D. 468, 467 (E.D. Cal. 2010).

Finally, Plaintiff's Counsel is a qualified firm with extensive experience in class action and wage and hour litigation. The Nichols Kaster firm has been in existence for over thirty years and is focused on advocating for employee and consumer rights. Nichols Kaster has represented thousands of employees in hundreds of cases. (Brome Decl. ¶ 9, Ex. 2.) Christopher Davis from Working Solutions NYC also has extensive experience in wage and hour litigation. (Davis Decl. ¶¶ 8–20.) The Named Plaintiff and Counsel satisfy the adequacy requirement of Rule 23.

### 2.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also meet at least one of the requirements of Rule 23(b)." *Barbosa*, 279 F.R.D. at 443. The Rule 23(b) requirements, known as predominance and superiority, focus on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Wells Fargo Home Mortg.*, 527 F. Supp. 2d at 1064 (citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Here, as noted above, Plaintiff's theory is that one common issue binds the proposed class—whether Defendant improperly classified Readers as independent contractors, and therefore failed to pay hourly wages when customers did not pay, and improperly deducted platform fees from Readers' wages. This issue drove the filing of this lawsuit, forms the basis of this settlement, and is a significant aspect of the case sufficient to find that common issues predominate over individual issues. *McEvoy*, 2025 WL 1882846, at *5 (predominance inquiry satisfied by common independent contractor misclassification issue where the record indicated the policies

in question applied to all class members); *Lim v. Transforce, Inc.*, 2022 WL 17253907, at \*9 (C.D. Cal., Nov. 15, 2022) (emphasizing that predominance inquiry is more lenient when certification is sought in settlement than in litigation, since the court does not need to deal with trial manageability issues, and finding that independent contractor issue predominated); *Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at \*5 (N.D. Cal., Feb. 2, 2022) (predominance satisfied due to independent contractor questions).

Likewise, Plaintiff contends that class-wide relief is a superior method of adjudicating this controversy. "Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Where, as here, a class settlement provides compensation to a group, whose individual damages are modest, the superiority requirement is satisfied. *Barbosa*, 297 F.R.D. at 445. This settlement provides significant monetary relief for the putative class members. It would be inefficient and uneconomical to abandon this settlement and force class members to litigate their nearly identical cases individually.

## B.    The Settlement Is Fair, Adequate, and Reasonable.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625; *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at \*3 (C.D. Cal. Jan. 31, 2014); *see also* Fed. R. Civ. P. 23(e)(1)(C). The trial court considers relevant factors, such as "the strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery

10

completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010). Here, the factors weigh heavily in favor of granting preliminary approval.

        1.   The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations Among Experienced Counsel.

This matter settled after two mediation sessions with an experienced mediator, with both sides represented by experienced counsel. The proposed Settlement was the product of arm's-length, hard-fought negotiations, including these mediations and further negotiations. Brome Decl. ¶¶ 2–3; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Court should easily find that this Settlement is an arm's-length deal among capable counsel experienced in similar litigation, and therefore entitled to a presumption of fairness. *See, e.g., White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009).

        2.   The Court Should Weigh the Strength of Plaintiff's Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and Risk of Maintaining Class Status Through Trial.

While Plaintiff is confident in the strength of his claims and those of the class, the claims are not without risk. Some uncertainty remains as to whether the class claims would receive and maintain certification, and whether Readers could prove their claims.

First, Defendant indicated that it would contest class certification. Defendant would likely have argued that there were differences among the Readers, possibly connected to the amount of their work, or where they performed service. Even if the

Court eventually granted class certification, such a decision may have drawn an appeal under Federal Rule of Civil Procedure 23(f).

Further, if Plaintiff succeeded in obtaining certification, he would need to prove that he and the class were misclassified as independent contractors, Defendant improperly deducted from their wages, and it failed to pay for all their time worked. Defendant contends that it operated a referral platform, and that it was not in the business of providing psychic advice, such that the Readers could properly be treated as independent contractors, and contends that it paid Readers lawfully. If Plaintiff established liability, Plaintiff would need to prove Defendant's alleged violations were willful for maximum recovery. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (defining willfulness standard under Labor Code § 203); *See Naranjo v. Spectrum Security Services, Inc.*, 15 Cal.5th 1056 (2024) (explaining that claims under Cal. Lab. Code § 226 are subject to a good faith defense). Defendant successfully asserting a good-faith defense could bar Plaintiff's claims under California Labor Code sections 203 and 226, and eliminate the collective's liquidated damages.

The uncertainty of contested litigation, trial and appeals also support approval of the settlement here. There is a risk that Plaintiff's claims could have been reduced or eliminated on dispositive motions or at trial; even if Plaintiff prevailed at trial, post-judgment appeals could follow. Plaintiff is cognizant of outcomes like *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007), which culminated after over 5 years of litigation in a Ninth Circuit reversal of a $52.5 million verdict for the plaintiffs. *See also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("While Objectors point out that much heavy-lifting had already been done, a number of serious hurdles remained—*Daubert* motions, [defendant's] anticipated motion for summary judgment, and a motion to bifurcate. Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement.").

The risks of continued litigation support settlement approval here.

### 3. The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.

The Settlement will provide Class Members with significant up-front payments. If all eligible Class Members participate in the settlement, the average payment per Class Member will be approximately $29,900, *after* deductions for attorneys' fees and costs. (Brome Dec. ¶ 10).

The settlement allocation reflects a very good result compared to possible results in litigation. The settlement allocation is fair and reasonable because it is based on individual earnings and work history, meaning it gives the greatest payment to workers with the largest potential claims. Plaintiff's Counsel calculated damages for all Class Members based on Defendant's records, using individualized records of each Class Member's sessions worked and associated compensation and deductions. Importantly, Plaintiff's Counsel reviewed and analyzed data for all Class Members prior to mediation. (Brome Decl. ¶ 4.) Armed with this data, Plaintiff's Counsel was able to analyze potential damages in conjunction with the risk of loss to Class Members.

As explained in further detail in Counsel's accompanying declaration, the reasonable value of the non-PAGA claims is approximately $2,238,277.64, and the PAGA claims is approximately $579,700.00.[2] (Brome Dec. ¶ 6.) These amounts assume Plaintiff succeeds in obtaining liability for all claims for the Class. This amount also includes more than $821,107 in liquidated damages, which, in litigation, the Court may exclude for its reasonableness analysis. *Rodriguez*, 563 F.3d at 955

---

[2] As described in the accompanying declaration, Plaintiffs' Counsel also calculated damages using alternate assumptions, some considerably more conservative, under which even complete recovery would have been worth less than the value of the settlement here, and some more aggressive, including one model under which Plaintiff would have sought to recover all money customers paid to Defendant – an outcome that would have been extremely unlikely in litigation. The settlement value here represents approximately 15% of that unlikely and aggressive maximum value. (Brome Dec. ¶ 6.)

(court may calculate settlement reasonableness without considering certain penalties). (*Id*.)  The settlement value here ($1,400,000.00) thus represents approximately 99% of the likely recovery when considering non-PAGA claims and excluding liquidated damages, which strongly supports approval. Significantly, the settlement is <u>more</u> than the value of the unpaid wages, when excluding interest and penalties ($1,012,050.84 assuming complete recovery for allegedly unpaid time and all connection fee deductions, but no liquidated damages or wage statement, waiting time, or PAGA penalties). This is a strong result, and favors approval. *See McEvoy*, 2025 WL 1882846, at *7 (independent contractor settlement worth approximately 14% of maximum possible damages supported approval); *Arrellano v. XPO Port Serv. Inc.*, 2021 WL 6882163, at *4 (C.D. Cal., Oct.8, 2021) (independent contractor settlement amounting to 18.2% of damages sought was reasonable and adequate and supported approval).

### 4.    The Extent of Discovery Completed and the Stage of the Proceedings also Favors Preliminary Approval.

While the Parties have not begun formal discovery, Defendant provided substantial data regarding class members' work and pay history, including detailed pay records for the Named Plaintiff and the other Readers. (Brome Decl. ¶ 4.) The Parties engaged in arms-length negotiations with enough evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. This amount of discovery and the calculations based on complete payroll data supports the finding that the Settlement is fair and reasonable. *See Nelson v. Avon Products, Inc.*, 2017 WL 733145, at *4 (N.D. Cal., Feb. 24, 2017) (noting that formal discovery is not required, and finding class counsel was "in a strong position to evaluate their case and conclude that settlement was the best way forward" where counsel had "obtained Avon's payroll information for a portion of the Class").

### 5.    The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Plaintiff's Counsel's experience is outlined above. As noted there, Plaintiff's Counsel have extensive experience in nationwide wage and hour litigation and believe the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of the Plaintiffs and Defendant, facilitated by a skilled employment law mediator, after thorough factual and legal investigation and analysis.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also Rodriguez*, 563 F.3d at 965 ("we put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.").

6.    The Reaction of the Class Members to the Proposed Settlement.

At final approval, after notice distribution, the Court can consider this factor.

7.    The Presence of a Government Participant.

There has been no government participant in this case. Plaintiff exhausted their PAGA claim with the LWDA, and the LWDA chose not to intervene or otherwise take any action in this case. (Brome Decl. ¶ 11). Plaintiff filed the settlement agreement with the LWDA in conjunction with filing this motion. (Brome Decl. ¶ 12.)

8.    The Enhancement Award Should be Approved

The Court should approve an enhancement or service award of $10,000 to the Named Plaintiff, which amounts to only 0.7% of the Gross Settlement Amount of $1,400,000.00, and less than one third of the average Class Member's allocation.

Enhancement awards should be evaluated using "'relevant factors, includ[ing] the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort

the Plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Staton*, 327 F.3d at 963.

By initiating and lending his name to this lawsuit, the Named Plaintiff took great professional risk. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at **5-6 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer"); *Deaver*, 2015 WL 8526982, at *15 (an enhancement award "is particularly appropriate in this wage and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this action against her former employer."). The Named Plaintiff risked retaliation, but chose to be substantially involved in the litigation, including educating Plaintiffs' Counsel about his job duties, compensation details, and Defendant's policies and procedures. (Brome Dec. ¶ 13). The Named Plaintiff reviewed documents, provided documents for counsel, and participated remotely in mediation. (*Id.*).

Further, the Named Plaintiff agreed to a general release of claims as to Defendant. (Ex. 1, ¶ 20.) *See, e.g.*, *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) (consideration for broader release appropriate); *Gong-Chun v. Aetna, Inc.*, 2012 WL 2872788, at *25 (E.D. Cal July 12, 2012) (general release of claims favors larger service award).

Under these facts, the requested enhancement is appropriate. Undersigned counsel believes that $10,000 for the Named Plaintiff is the minimum amount which would viably promote the public policy interest in encouraging those with wage claims to assert them despite the fears associated with doing so. (Brome Dec. ¶ 13); *Arrellano*, 2021 WL 6882163, at *5 (preliminarily approving enhancements of $10,000 to three plaintiffs); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (approving $15,000 to nine named plaintiffs in wage and hour class action); *Boyd v. Bank of Am.*, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) ($15,000 to class representatives in wage and hour class action).

### C.    The Court Should Preliminarily Approve the Fees and Costs.

The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount. *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, at *14 (N.D. Cal. 2007). However, the choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.3 percent, with 25 percent considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *3 (N.D.Cal.,2009). California courts routinely approve fee awards in common fund cases at or above 30%. *Barbosa*, 297 F.R.D. at 450 (approving fee award of 33%, and collecting nine recent wage and hour cases approving fee awards of 30-33.3%).

Plaintiffs will provide further briefing on their request for attorneys' fees in a separate motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Here, Plaintiffs' Counsel seeks attorneys' fees at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement. Given that Plaintiffs' Counsel seeks fees at the benchmark percentage, Plaintiff respectfully requests that the Court defer a detailed attorneys' fee analysis until the motion for attorneys' fees that will follow. This is appropriate since the factors considered in assessing whether the fee award is fair and reasonable (the results obtained, the risk of litigation, the skill required, the quality of the work performed, the contingent nature of the fee, and awards in similar cases) partially depend on Class Members' responses to the notice

of settlement. Plaintiffs' Counsel provides a summary of this analysis to facilitate approval.

### 1. The Percentage-of-the-Fund Method is Warranted Here.

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. *Laffitte v. Robert Half Int'l Inc*., 1 Cal. 5th 480, 503 (2016). In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing*, 444 U.S. at 478. The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." (*Id*.) Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino*, 290 F.3d at 1050.

Trial courts have the discretion to conduct a lodestar cross-check on a percentage fee, but also retain the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee. *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 30 (2000). A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.[3] *See, e.g., Glass*, 2007 WL 221862, at *16.

### 2. The percentage requested is fair and reasonable.

While the Ninth Circuit endorsed a benchmark of 25 percent, *Powers*, 229 F.3d at 1256, the actual percentage of fees awarded varies depending on the facts of each case, and common fund cases often make an award that exceeds the 25 percent

---

[3] Plaintiffs' Counsel will provide more information about their lodestar in connection with their Motion for Final Approval of the Settlement. Based on an initial review of their time records, Plaintiffs' Counsel's lodestar is $179,337.50.  (Brome Dec. ¶ 15; Davis Dec. ¶ 22.)

benchmark. *Knight*, 2009 WL 248367 at *3. Courts consider several factors to determine whether to depart from this benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). Here, these factors support an award of fees at the 25% benchmark.

### 3.   The Result Obtained for the Class and Similar Awards

The result obtained for the class is a significant factor to be considered by the Court in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). Even a limited comparison to other actions for unpaid wages highlights the success achieved here. *See, e.g., Deaver*, 2015 WL 8526982, at **7, 11 (approving 33% of the fund in attorneys' fees based on "very favorable" results where the total settlement fund equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards.") Here, the settlement represents approximately 99% of the reasonable value of the claims, strongly supporting the requested fees.

### 4.   Counsel's experience and skill and complexity of issues

This case involved issues of independent contractor classification under state law and wage deduction issues, as applied to a non-traditional workforce. Counsel's experience in vigorously litigating class/collective wage and hour actions were essential in obtaining this favorable result. Counsel litigated the case efficiently and effectively, negotiating a favorable settlement without the need for drawn out discovery or contested class certification and summary judgment motions. These facts favor approval. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) ("[T]he court believes that an award of 29% of the common fund . . . is appropriate. It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims

with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts.").

### 5.    Risk of litigation and contingent fees

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *13 (C.D. Cal. Jul. 14, 2014). The contingent nature of the work performed by Plaintiff's Counsel and the risk taken in advancing costs, also weigh in favor of determining a higher percentage fee. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services."). Plaintiff's Counsel handled this case on a contingency basis. (Brome Decl. ¶ 14.) Plaintiff's Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out-of-pocket litigation costs. (*Id.*) Plaintiff's Counsel alone undertook the financial risk of unsuccessful litigation. (*Id.*) This factor favors approval.

### 6.    The Court should approve costs of up to $25,000.

Plaintiff's Counsel further request reimbursement of actual litigation costs of no more than $25,000. Plaintiff's Counsel have presented a detailed accounting of their costs showing actual costs through August 13, 2025 of $20,218.88.[4] Plaintiff's Counsel have reasonably incurred these costs during the course of litigating this case and will continue to incur additional expenses throughout the settlement approval, implementation, payment, and reporting process. Any approved but unexpended costs will be reallocated to Class Members. (Ex. 1, ¶ 30.)

**D.    The PAGA Allocation is Reasonable.**

---

[4] Brome Dec. ¶ 16, Ex. 3. This figure does not include costs of settlement administration.

The PAGA portion of a settlement must be reviewed and approved by the Court. Cal. Lab. C. § 2699(s)(2). While the statute does not provide specific standards for review of PAGA settlements, courts "have a duty to ensure that the negotiated resolution of a PAGA claim is fair to those affected." *Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 693 (2024) (quotations and citation omitted). PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval. *Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010).

Here, the PAGA penalties flow from the alleged underlying Labor Code violations. Additionally, the time period covered by the PAGA claim is entirely covered by the time covered by the Labor Code claims. As a result, all the aggrieved employees are also class members. It is therefore very reasonable to allocate a small portion of the total settlement to PAGA. *See Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (approving settlement where PAGA allocation represented between .27% - 2% of PAGA exposure, explaining "the Court's analysis of the settlement of the PAGA claim is informed by broader principles . . . and the significant recovery for the Rule 23 class, which suggests that the settlement is within the range of reasonableness.") Here, the $10,000 PAGA allocation represents 1.7% of the estimated value of the PAGA claims as calculated at mediation, and .7% of the gross settlement amount. (Brome Dec. ¶ 7). This is more than the portions that are routinely approved in other hybrid class and PAGA actions. *See, e.g.*, *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims, and explaining "settlement of the PAGA claim may be substantially reduced below its standalone settlement value without sacrificing its statutory purposes because the non-PAGA settlement is relatively substantial."); *Boyd*, 2014 WL 6473804, at *8 (approving PAGA penalties worth 0.32% of gross settlement); *Alexander v. FedEx Ground*, 2016 WL 1427358,

21

at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

### E.    The Court Should Approve the Administrator and *Cy Pres* Beneficiary.

The Parties have selected Simpluris, Inc., an experienced claims administrator, to serve as the Settlement Administrator to administer various components of the proposed settlement. Simpluris is well-qualified, and provided a very reasonable bid. (Brome Dec. ¶ 17.)

Legal Aid at Work is a non-profit organization "that provides civil legal services to the indigent and pro bono employment law advice to low-income communities." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) (approving designation as *cy pres* recipient, noting that "the work performed by the Employment Law Center bears a substantial nexus to the interests of the class members" in a wage and hour case). Legal Aid at Work "works to ensure that all workers benefit from the laws that regulate pay and work hours." *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4 (C.D. Cal. June 13, 2013). Accordingly, Legal Aid at Work is an appropriate *cy pres* recipient here, and furthers the objectives underlying the statutes at issue and the interests of silent class members. *Bernstein v. Virgin America, Inc., Inc.*, 2023 WL 7284158, at *1 (N.D. Cal. Nov. 3, 2023) (approving Legal Aid at Work as cy pres beneficiary); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848, at *6 (E.D. Cal. Nov. 27, 2017) (same).

## V.    CONCLUSION

For the foregoing reasons, the Parties' request that the Court grant preliminary approval of this settlement.

Dated: August 13, 2025                    **NICHOLS KASTER, LLP**

By:    */s/Daniel S. Brome*
Daniel S. Brome

1

2          Attorneys for Plaintiff and Others
           Similarly Situated
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL—CASE NO. 2:24-cv-08887-SK