1  | REENA I. DESAI (MN BAR #388311)*
   | rdesai@nka.com
2  | NICHOLS KASTER, PLLP
   | 4700 IDS Center, 80 South 8th Street
3  | Minneapolis, MN 55402
   | Telephone: (612) 256-3200
4  | Facsimile: (612) 215-6870

5  | CHRISTOPHER Q. DAVIS (NY BAR #4068680)*
   | cdavis@workingsolutionsnyc.com
6  | WORKING SOLUTIONS LAW FIRM, PLLC
   | 80 Broad Street, Suite 703
7  | New York, NY 10004
   | Telephone: (646) 430-7930
8  | Facsimile:  (646) 349-2504

9  | *Admitted *pro hac vice*

10 | Attorneys for Plaintiff

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | ALBERT SIMIC, Plaintiff, on behalf of himself and all others similarly situated,

   | Case No. 2:24-cv-08887-SK

16 | Plaintiff,

   | **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**

17 | vs.

18 | KASAMBA, INC.,

19 | Defendant.

20 | Date: January 7, 2026
   | Time: 10:00 a.m.
   | Place: Courtroom 540

21

22

23

24

25

26

27

28

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL—CASE NO. 2:24-cv-08887-SK

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiff's Unopposed Motion for Final Approval of Settlement on January 7, 2026, at 10:00 a.m. in the Courtroom of the Honorable Steve Kim, located at 255 E. Temple Street, Courtroom 540, 5th Floor, Los Angeles, CA 90012. Plaintiff will and does hereby move this Court for final approval of a Settlement reached in Class and Private Attorneys General Act ("PAGA") action against Defendant Kasamba, Inc. ("Kasamba"). Plaintiff moves the Court for an order:

1)    Confirming the Court's certification of the settlement class, its appointment of Plaintiff Simic as the class representative and its appointment of Plaintiff's Counsel as Class Counsel;

2)    Confirming the Court's preliminary finding that the proposed settlement is fair, reasonable, and adequate, and worthy of approval both as to the Class and PAGA, and directing the parties to effectuate the Settlement Agreement;

3)    Approving the $10,000 PAGA Allocation, of which 75%, or $6,500, will be distributed to the California Labor Workforce and Development Agency ("LWDA"), and $3,500 will be distributed to PAGA Employees;

4)    Determining that the Parties followed the Court-approved notice plan, and that the execution of the notice plan satisfied Fed. R. Civ. P. 23 and due process; and

5)    Reserving and retaining exclusive and continuing jurisdiction over the Action, Class Representative, Class Members, and Defendant for the purposes of supervising the implementation, effectuation, enforcement, construction, administration, and interpretation of the Settlement Agreement.

The Motion is based upon the Notice of Motion and Unopposed Motion for Final Settlement Approval and Memorandum of Points and Authorities in Support Thereof; the supporting Declaration of Reena I. Desai, and accompanying exhibits including the Settlement Agreement; all other exhibits and attachments submitted in support of the

Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Plaintiff has met and conferred with Defendant, who does not oppose this motion.

Dated:  December 10, 2025                    **Nichols Kaster, PLLP**

By: _/s/Reena I. Desai_
Reena I. Desai
Attorney for Plaintiff and the Rule 23 Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL—CASE NO. 2:24-cv-08887-SK

# **TABLE OF CONTENTS**

_Toc216265174TABLE OF CONTENTS .................................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

INTRODUCTION ............................................................................................... 1

RELEVANT BACKGROUND ........................................................................... 1

I.     SETTLEMENT TERMS ................................................................... 3

       A.    Gross Settlement Amount and Class Member Allocations ............ 4

       B.    The Settlement Process Provides Fair Notice and the Scope of the Release is Appropriate ......................................................... 5

ARGUMENT ....................................................................................................... 7

II.    THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES OF SETTLEMENT ..................... 7

       A.    Numerosity is Satisfied. .................................................................. 7

       B.    There are Questions of Law and Fact Common to the Class. ......... 8

       C.    The Named Plaintiff's Claims are Typical of the Class. ................. 9

       D.    Adequacy is Satisfied. ................................................................... 10

       E.    The Class Satisfies the Requirements of Rule 23(b)(3) ................ 11

III.   THE NOTICE PROCESS COMPORTS WITH THE REQUIREMENTS OF RULE 23 ......................................................... 12

IV.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ................................................................................... 13

       A.    The Settlement Is Non-Collusive and Was the Product of Extensive  Negotiations Among Experienced Counsel. ................ 14

       B.    The Court Should Weigh the Strength of Plaintiff's Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and Risk of Maintaining Class Status Through Trial. ................................................................................ 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL—CASE NO. 2:24-cv-08887-SK

| | | | |
|---|---|---|---|
| | C. | The Amount Offered in Settlement Weighs Strongly in Favor of Approval. | 16 |
| | D. | The Extent of Discovery Completed and the Stage of the Proceedings also Favors Preliminary Approval | 17 |
| | E. | The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval | 17 |
| | F. | The Reaction of the Class Members to the Proposed Settlement. | 18 |
| | G. | The Presence of a Government Participant. | 18 |
| V. | | THE PAGA SETTLEMENT WARRANTS APPROVAL | 18 |
| CONCLUSION | | | 20 |

# **TABLE OF AUTHORITIES**

## **Cases**

*Alexander v. FedEx Ground*, 2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ..............20

*Anchem Products v. Windsor*, 521 U.S. 591 (1997).......................................................10

*Arias v. Sup. Ct.*, 46 Cal.4th 969 (2009)........................................................................19

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005)..............................................15

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)......................................................8, 9

*Arrellano v. XPO Port Serv. Inc.*, 2021 WL 6882163

    (C.D. Cal., Oct.8, 2021).........................................................................................17

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)..........10, 11, 12

*Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942

    (N.D. Cal., Feb. 2, 2022) ......................................................................................11

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245

    (N.D. Cal. 2015) ..............................................................................................10, 13

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, 2014 WL 2967474

    (N.D. Cal. June 30, 2014) .....................................................................................13

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) .........................................18

*Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D 623 (N.D. Cal. 2005) .............7

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067

    (C.D. Cal. Jan. 7, 2010) ........................................................................................14

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) .................8

*Cruz v. Sky Chefs*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ...............................20

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000)........................................................7

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.* 253 F.Supp.3d. 1074

    (C.D. Cal. 2017).....................................................................................................18

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ......................................8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................8, 9, 10

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)..................8

vi

*Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1214
  (2014) ................................................................................................ 8

*In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d
  1119 (9th Cir. 2007) ........................................................................ 15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053
  (N.D. Cal. 2007) ....................................................................... 8, 11

*Johnson v. California*, 543 U.S. 499 (2005) ............................................ 8

*Lim v. Transforce, Inc.*, 2022 WL 17253907 (C.D. Cal., Nov. 15, 2022) ............... 11

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
Inc.*, 244 F.3d 1152 (9th Cir. 2001) ..................................................... 11

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........... 13

*McEvoy v. Henry Industries, Inc.*, 2025 WL 1882846
  (E.D. Cal., July 8, 2025) ..................................................... 9, 11, 17

*Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896
  (N.D. Cal. July 25, 2022) ................................................................ 19

*Murillo v. Pac. Gas & Elec.*, 266 F.R.D. 468 (E.D. Cal. 2010) ...................... 10

*Naranjo v. Spectrum Security Services, Inc.*, 15 Cal.5th 1056 (2024) ............... 15

*Nelson v. Avon Products, Inc.*, 2017 WL 733145 (N.D. Cal., Feb. 24, 2017) ......... 17

*Nordstrom Com'n Cases,* 186 Cal.App.4th 576 (2010) .................................. 19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d
  615 (9th Cir. 1982) ....................................................................... 13

*Ramirez v. Merrill Gardens, LLC*, 2024 WL 3011142
  (E.D. Cal. June 11, 2024) ................................................................ 13

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ............................... 13

*Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) ...................... 16, 18

*Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ............ 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................. 7

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................... 12

*Vazquez v. USM Inc.*, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ......................... 20

*Viceral v. Mistras Grp. Inc.*, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) .............. 19

*White v. Experian Info. Sols., Inc.*, 2009 WL 10670553

  (C.D. Cal. May 7, 2009) ...................................................................... 14

*Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544771

  (C.D. Cal. June 14, 2023) ................................................................... 13

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), *amended by*

  273 F.3d 1266 (9th Cir. 2001) ............................................................ 12

**Statutes**

Cal. Lab. Code § 226 .............................................................................. 15

Cal. Lab. Code § 2699 ............................................................................ 18

**Rules**

Fed. R. Civ. P. 23 ........................................................................... 7, 10, 13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL—CASE NO. 2:24-cv-08887-SK

## **INTRODUCTION**

Plaintiff Albert Simic ("Plaintiff") brought this class action on behalf of individuals who work or worked as online psychic readers ("Readers") in California against Kasamba, Inc. ("Defendant"), challenging Defendant's classification of Readers as independent contractors. Plaintiff alleged that Readers should have been treated as employees. The parties reached a settlement of $1,400,000.00 for Plaintiff and the putative class and fully executed a comprehensive settlement agreement on August 13, 2025. (ECF No. 47-2, Settlement Agreement.) On September 10, 2025, upon Plaintiff's unopposed motion, the Court preliminarily approved the settlement, certified for settlement purposes the Settlement Class, appointed Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel, approved the Settlement Administrator, authorized the distribution of notice, and preliminarily approved the requested attorneys' fees, costs, and enhancement award. (ECF No. 52, Order.)

Plaintiff and Class Counsel secured an excellent result for the Settlement Class. Under the Settlement Agreement, the net settlement amount is $951,777.00 for 32 Class Members. This results in an average allocation of approximately $29,750, ranging from $476 to $171,000, all *after* deductions for an amount for the state for PAGA claims and attorneys' fees and costs. Given the excellent results and efforts Plaintiff and Class Counsel expended, Plaintiff respectfully request that the Court find that the settlement is fair, reasonable and adequate, confirm the Court's preliminary certification of the settlement class, approve the $10,000 PAGA allocation, direct the parties to effectuate the Settlement Agreement, and retain exclusive and continuing jurisdiction over the Settlement.

## **RELEVANT BACKGROUND**

Plaintiff initially filed this lawsuit in Los Angeles County Superior Court on September 9, 2024. Defendant removed the case to the Central District of California on October 15, 2024. (ECF No. 1.) This action was initially assigned to the Hon. John F. Walter, who issued a scheduling and case management order on November 12, 2024,

setting a May 5, 2025, deadline to conduct mediation and the remaining case deadlines. (ECF No. 30.)  Plaintiff filed a First Amended Complaint on November 21, 2024, ECF No. 31, and the Parties consented to proceed before Magistrate Judge Kim on November 22, 2024. (ECF No. 33.)

This case is brought on behalf of individuals who work or worked as online psychic readers ("Readers"). Using Defendant's website, Plaintiff and other Readers provided services to customers; those customers paid Defendant (who then paid Readers) based on the length of the call or chat session. Defendant classifies the Readers as independent contractor and contends it paid them accurately according to the terms of their agreements, and that the independent contractor classification was proper. Plaintiff alleges, however, that Readers should have been treated as employees, and that Defendant's payment practices ran afoul of the Labor Code for Readers who worked in California. Specifically, Plaintiff contends that Defendant improperly deducted certain fees from the amounts paid to Readers, and that those platform fees constituted improper deductions from wages and/or business expenses that the employer should bear. Additionally, Plaintiff contends that Defendant's pay plan allowed Readers to work for free, in violation of California's minimum wage laws, since Readers get paid based on how much customers pay. For example, if a customer refused to pay for a session, the Reader might not receive pay, or when new customers received three free promotional minutes, Readers would lose those minutes of pay. Defendant denies these allegations.

In advance of mediation, Defendant produced detailed records for all California Readers. This data showed how many sessions were conducted by California Readers by phone or chat, how long those sessions lasted, and how they were paid. For most of the covered time period, the data showed the total length of the Readers' sessions as well as the amount of time that was paid; for some of the covered time period, the data only included the paid minutes. Using this data, Class Counsel was able to calculate the number of allegedly unpaid minutes, capturing the unpaid three-minutes

that were free for new clients and instances where the Reader was not paid, likely because the client did not pay for the call, whatever the reason.

Prior to Defendant answering the First Amended Complaint, the Parties filed a Stipulation to Stay all Deadlines Pending Mediation to conserve time and resources of the Parties and the Court. (ECF No. 36.) The Court granted the Stipulation on December 5, 2024. (ECF No. 37.) The Parties attended a full-day mediation session on April 24, 2025, and a follow-up session on May 13, 2025, with experienced California mediator Jill Sperber at Judicate West. (Desai Decl. ¶ 2.) As a result of the mediation sessions, the Parties fully executed a Memorandum of Understanding on May 20, 2025, and executed a comprehensive settlement agreement on August 4, 2025. (ECF No. 47-2, Settlement Agreement.)

Including the Named Plaintiff, there are 32 Readers included in the settlement. On September 10, 2025, the Court preliminarily approved the settlement and authorized the distribution of Court-approved Notice of Class Action ("Notice") to all identified Class Members. (ECF No. 52, Order.) Class Counsel sent the Notice on October 23, 2025 by email and mail to all 31 Class Members.[1] The Notices included each Class Members' individual settlement allocation. (ECF No. 47-2 at Ex. A (Class Action Notice; Desai Decl. ¶¶ 5-6.) The deadline to object or opt-out is December 22, 2025.[2] (*Id*. ¶ 5.) Class Counsel has not received any opt-outs or objections as of the date of this motion, but will report any opt-outs or objections to the Court after the deadline.

## I. SETTLEMENT TERMS

---

[1] California Readers included in the settlement are individuals Defendant identified as eligible class members (i.e., Readers who worked for Defendant in California since September 9, 2020) based on Defendant's data, and whose data Defendant produced in advance of mediation. (ECF No. 47-2, Settlement Agreement ¶ 5.)

[2] Should a class member objection to Class Counsel's requests in this Motion on or before the December 22, 2025 deadline, Class Counsel will file a response for the Court's consideration.

## A.    Gross Settlement Amount and Class Member Allocations

Under the proposed settlement, Defendant is expected to pay $1,400,000.00 (ECF No. 47-2, Settlement Agreement at ¶ 11). If additional Class Members are added, or if Class Members opt-out, and the allocation amounts exceed $50,000 in the aggregate, then the settlement will be increased or decreased proportionally. (*Id.* ¶ 29.)

The settlement contemplates a payment plan. If the settlement is approved, Defendant will make the Initial Payment of $1,000,000.00 within 30 days of final Court approval and judgement. (*Id.* ¶ 30.) Within 120 days after the Initial Payment, Defendant will make the Final Payment of $400,00.00. (*Id.* ¶ 30.)

The gross settlement amount includes:

- Administrative costs in the amount of $6,223. (*Id.* ¶ 11 (allowing up to $6,500); *see also* Plaintiff's Motion for Attorneys' Fees, Costs, and Service Payment filed concurrently.)

- A Gross Settlement Amount of $1,400,000.00 to pay claims for all Class Members who do not submit timely and valid requests for exclusion. (*Id.* ¶ 18);

- A Contingency Fund of $50,000 from the Gross Settlement Amount for the initial allocations to address any allocation issues. Any remaining amounts will be reallocated on a pro rata basis for the Final Payment. (*Id.* ¶ 36.)

- Attorneys' litigation costs of $22,000. (*Id.* ¶ 11 (allowing up to $25,000); *see also* Plaintiff's Motion for Attorneys' Fees, Costs, and Service Payment);

- Attorneys' fees in the amount of 25% of the Gross Settlement Amount. (*Id.* ¶ 11);

- An Enhancement Award of $10,000 to Plaintiff Simic, for his service to the Settlement Class. (*Id.* ¶ 32);

4

- PAGA Allocations of $10,000 total, with $6,500 to be distributed to the California's Labor Workforce Development Agency ("LWDA"). (*Id*. ¶ 34).

The settlement includes a Rule 23 settlement class of 32 Readers who will receive their allocation unless they submit a valid and timely request for exclusion. The Parties agree the case can be settled on a class basis, although Defendant would have contested class certification in litigation. (ECF No. 47-2, Settlement Agreement ¶ 5.) The settlement payments will be divided between payments for wages and non-wages amounts, with 40% designated as of disputed unpaid wages and reported on an IRS Form W-2, and 60% designated as payment for liquidated damages and reported on an IRS Form 1099. (*Id*. ¶ 15.) The Settlement Administrator will issue payments to Settlement Class Members in the form of a check within 14 days after the Initial Payment and within 14 days of the Final Payment. (*Id*. ¶ 37.)

The distribution will be done fairly. All of the Net Settlement Amount will be allocated on a prorated basis to Settlement Class Members who did not opt out. (*Id*. ¶ 36.) The allocation formula is based on Class Counsel's damages analysis with weighting for certain claims, penalties, and damages based on litigation risk. (*Id*.) This was provided to and approved by Defendant's Counsel. (*See id*. ¶ 36.)

## B. The Settlement Process Provides Fair Notice and the Scope of the Release is Appropriate

The Parties selected and the Court approved Simpluris, Inc. as the Settlement Administrator, a reputable administrator with considerable experience administering this type of settlement. The Settlement Administrator will set up a Qualified Settlement Fund, issue the payments, tax forms, and will maintain the settlement website. (*Id*. ¶ 30, 31, 33, 37.)

To allow more funds to be devoted to the Settlement Class Members, Class Counsel distributed the Class Notice, as opposed to the Settlement Administrator. (Desai Decl. ¶ 5.) Class Counsel mailed and emailed the Court-approved Class

Action Notices (attached as Exhibit A to ECF No. 47-2, Settlement Agreement) on October 23, 2025, and the Settlement Administrator created a website for Settlement Class Members. (ECF No. 47-2, Settlement Agreement ¶ 42; Desai Decl. ¶ 5.) The Notice describes the litigation, the terms of the Settlement, and the respective options for eligible individuals to participate in, opt out, or object to the settlement, and informs them of their estimated allocation and the claims that they release through the settlement. (*Id*. ¶ 42.) The Notice provides information regarding the basis of the allocations, the final approval hearing, and how class members may obtain more information about the settlement. (*Id*.)

Of the 31 Notices mailed, 6 were returned as undeliverable. (Desai Decl. ¶ 6.) Class Counsel was able to reach three of the six Class Members to ensure they received Notice. For the remaining three, to the extent contact information was available, Class Counsel emailed, left voicemails, texted, and mailed to alternate addresses. (*Id*.) Defendant produced email addresses for all Class Members allowing Class Counsel to also email the Notices. Only emails to three Class Members bounced back, and were not the same Class Members whose mailed Notices were returned. (*Id*.)

Plaintiff will provide the Court with the results of the Notice period (i.e, whether anyone opt-ed out or objected) after the December 22, 2025 deadline, and before the January 7, 2026 Final Approval Hearing.

After final approval, Class Members who did not opt-out will release only those California wage and hour claims asserted in Plaintiff's First Amended Complaint, including all claims for failure to pay minimum wage (including the alleged violation of the California Labor Code and IWC Wage Order No. 10), failure to provide reimbursement for business expenses, unlawful withholding of earned wages, failure to provide accurate wage statements, and failure to pay earned wages upon discharge, as well as related penalties under PAGA. (ECF No. 47-2, Settlement Agreement ¶ 23.) Only the Named Plaintiff will execute a full, general release of all claims; his

enhancement is consideration also for this general release. (*Id*. ¶ 20). The time period covered by the releases is not open ended; instead, the releases run up to and include the date of filing the motion for Preliminary Approval, which was August 13, 2025. (*Id*. ¶ 23). In other words, the claims being released are finite, and the value is not being diluted by the passage of time since mediation.

## ARGUMENT

## II.    THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES OF SETTLEMENT

A trial court has wide discretion in certifying a class for settlement purposes and will be reversed only upon a strong showing that its decision was a clear abuse of discretion. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Rule 23(a) provides that a class action is proper if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b). Where, as here, the parties reach a class settlement for a class that has not yet been certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).

The Court conditionally certified the settlement class for settlement purposes in granting Plaintiffs' motion for preliminary approval. (ECF No. 52, ¶ 2.) The Court should confirm that finding now.

### A.    Numerosity is Satisfied.

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold. *Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D 623, 628 (N.D. Cal. 2005). Instead, numerosity demands "examination of the specific facts of each case." *Collins*

1      *v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (citing *Gen.*

2      *Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "'[I]mpracticality' does

3      not mean 'impossibility,' but only the difficult or inconvenience of joining all

4      members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

5      913-14 (9th Cir. 1964).

6          Here, the numerosity requirement is satisfied because joinder of all members of

7      the proposed Rule 23 class is impracticable. According to Defendant's data, there are

8      32 California Class Members, including the Named Plaintiff. (Desai Decl. ¶ 4.)

9      Bringing all these individuals before the Court would be impractical. *See Hendershot*

10     *v. Ready to Roll Transp., Inc.*, 228 Cal.App.4th 1214, 1222-23 (2014). Judicial

11     economy is also served by resolving the class claims through class settlement.

12     Particularly given that the Parties have reached a settlement that provides substantial

13     relief to Class Members while preserving their option to opt-out and pursue their

14     claims individually, certifying the claims for settlement purposes limits the

15     expenditure of judicial resources.

16     **B.**     **There are Questions of Law and Fact Common to the Class.**

17         In the Ninth Circuit, "Rule 23(a)(2) has been constructed permissively. All

18     questions of fact and law need not be common to satisfy the rule. The existence of

19     shared legal issues with divergent factual predicates is sufficient, as is a common core

20     of salient facts coupled with disparate legal remedies within the class." *Hanlon v.*

21     *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality is typically

22     satisfied where plaintiffs challenge "a system-wide practice or policy that affects all

23     the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001),

24     *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005).

25     Whether Class Members were subject to a given compensation policy, and whether

26     that policy was uniformly applied and unlawful are common questions of law and fact

27     that may satisfy Rule 23(a)(2). *In re Wells Fargo Home Mortg. Overtime Pay Litig*.,

28     527 F. Supp. 2d 1053, 1065–68 (N.D. Cal. 2007) (finding commonality and

predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

Here, the class is principally bound by the question of whether Defendant improperly classified Readers as independent contractors, and therefore failed to pay hourly wages when customers did not pay, and improperly deducted platform fees from Readers' wages. Plaintiff alleges other Readers were paid on the same pay plan and were harmed in the same way by Defendant's common policies. Plaintiff contends the additional class claims are derivatives of these common independent contractor and unpaid wage questions, and the answers do not depend on an individualized analysis and will drive the outcome for all class members. Accordingly, the commonality requirement is satisfied. *E.g.*, *McEvoy v. Henry Industries, Inc.*, 2025 WL 1882846, at \*4 (E.D. Cal., July 8, 2025) (commonality satisfied for preliminary approval since key question of whether all plaintiffs were improperly classified as independent contractors could be answered in one stroke).

### C.    The Named Plaintiff's Claims are Typical of the Class.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied where the class members' claims arise from the same course of events, and class members make similar legal arguments. *Armstrong*, 275 F.3d at 868.

Here, the Named Plaintiff's claims are typical of Class Members' claims. Plaintiff worked in California as a Reader, was classified as an independent contractor, was not paid for certain time worked and had platform fees deducted from his pay. Plaintiff and the class were all subject to Defendant's alleged policy and practice of improperly classifying Readers as independent contractors, and thus failing to pay appropriate compensation. Plaintiff's claims are co-extensive with the class members' because Plaintiff and class members all allege they "were all Defendant's employees, working under the same pay practices and the same

9

company-wide employment policies." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013). The claims are typical.

### D.    Adequacy is Satisfied

The adequacy factor requires: (1) that the proposed representative Plaintiff does not have conflicts of interest with the proposed class; and (2) that Plaintiff and competent counsel will vigorously prosecute the action. *Hanlon*, 150 F.3d at 102-21; Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the class. There are no conflicts of interest within the proposed settlement that would pit Plaintiff against Class Members. Plaintiff is "part of the class and possess the same interest[s] and suffer the same injur[ies] as class members." *Anchem Products v. Windsor*, 521 U.S. 591, 625-26 (1997). Moreover, the settlement provides payment to the named Plaintiff on the same formula as class members. While the Settlement provides for a modest Service Award ($10,000) for the Named Plaintiff, such awards do not defeat adequacy. *Bellinghausen v. Tractor Supp. Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015).

Additionally, Plaintiff and Class Counsel satisfy the requirement of vigorous prosecution because competent counsel reached the decision to settle this matter after a robust exchange of information and two mediation sessions with a skilled mediator. The Court may properly conclude "that plaintiff's counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire class." *Murillo v. Pac. Gas & Elec.*, 266 F.R.D. 468, 467 (E.D. Cal. 2010).

Finally, Class Counsel is a qualified firm with extensive experience in class action and wage and hour litigation. The Nichols Kaster firm has been in existence for over thirty years and is focused on advocating for employee and consumer rights. Nichols Kaster has represented thousands of employees in hundreds of cases. (Desai Decl. ¶¶ 7-8; ECF No. 47-3 (NK Firm Resume).) Christopher Davis from Working Solutions NYC also has extensive experience in wage and hour litigation. (ECF No.

47-5, Davis Decl. ¶¶ 8–20.) The Named Plaintiff and Counsel satisfy the adequacy requirement of Rule 23.

### E.     The Class Satisfies the Requirements of Rule 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also meet at least one of the requirements of Rule 23(b)." *Barbosa*, 279 F.R.D. at 443. The Rule 23(b) requirements, known as predominance and superiority, focus on the relationship between the common and individual issues. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Wells Fargo Home Mortg.*, 527 F. Supp. 2d at 1064 (citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Here, as noted above, Plaintiff's theory is that one common issue binds the proposed class—whether Defendant improperly classified Readers as independent contractors, and therefore failed to pay hourly wages when customers did not pay, and improperly deducted platform fees from Readers' wages. This issue drove the filing of this lawsuit, forms the basis of this settlement, and is a significant aspect of the case sufficient to find that common issues predominate over individual issues. *McEvoy*, 2025 WL 1882846, at *5 (predominance inquiry satisfied by common independent contractor misclassification issue where the record indicated the policies in question applied to all class members); *Lim v. Transforce, Inc.*, 2022 WL 17253907, at *9 (C.D. Cal., Nov. 15, 2022) (emphasizing that predominance inquiry is more lenient when certification is sought in settlement than in litigation, since the court does not need to deal with trial manageability issues, and finding that independent contractor issue predominated); *Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *5 (N.D. Cal., Feb. 2, 2022) (predominance satisfied due to independent contractor questions).

Likewise, Plaintiff contends that class-wide relief is a superior method of adjudicating this controversy. "Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). Where, as here, a class settlement provides compensation to a group, whose individual damages are modest, the superiority requirement is satisfied. *Barbosa*, 297 F.R.D. at 445. This settlement provides significant monetary relief for the putative class members. It would be inefficient and uneconomical to abandon this settlement and force class members to litigate their nearly identical cases individually.

## III.  THE NOTICE PROCESS COMPORTS WITH THE REQUIREMENTS OF RULE 23

In granting preliminary approval of the settlement, the Court approved the notice process and proposed Notice. (ECF No. 52, Order.) Class Counsel mailed and emailed the Court-approved Class Action Notices (Attached as Exhibit A to ECF No. 47-2, Settlement Agreement) on October 23, 2025, and the Settlement Administrator created a website for Settlement Class Members. (Desai Decl. ¶ 5.) The Notice describes the litigation, the terms of the Settlement, and the respective options for eligible individuals to participate in, opt out, or object to the settlement, and informs them of their estimated allocation and the claims that they release through the settlement. (ECF No. 47-2, Settlement Agreement, Ex. A.) The Notice provides information regarding the basis of the allocations, the final approval hearing, and how class members may obtain more information about the settlement. (*Id.*)

Of the 31 Notices mailed, 6 were returned as undeliverable. (Desai Decl. ¶ 6.) Class Counsel was able to reach three of the six Class Members to ensure they

12

received Notice. For the remaining three, to the extent the contact information was available, Class Counsel emailed, left voicemails, texted, and mailed to alternate addresses. (*Id.*) Defendant produced email addresses for all Class Members allowing Class Counsel to also email the Notices.  Only emails to three Class Members bounced back, and were not the same three whose Notices were returned. (*Id.*)

Because Rule 23 "does not necessarily require that every in-state class member actually receive notice," *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010), the Court should confirm that the notice process satisfied the requirements of Rule 23 and due process. *See*, *e.g.*, *Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544771, at *5 (C.D. Cal. June 14, 2023) (overruling objection to sufficiency of notice where 6.2% and 8.6% of notice packets were returned undeliverable and no skip tracing was performed); *Ramirez v. Merrill Gardens, LLC*, 2024 WL 3011142, at *10 (E.D. Cal. June 11, 2024) (finding notice to be sufficient with 2% undeliverable rate in a class of 4,673); *Bellinghausen,* 306 F.R.D. at 254 (notice was sufficient where, in class with 1,318 members, administrator could not locate new address for 16 undeliverable notices and 4 notices were returned after a second mailing, resulting in a 1.5% undeliverable rate); *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (mailed notice sufficient where 27 of 1,374 notices (2%) were returned undeliverable).

## IV.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014); *see also* Fed. R. Civ. P. 23(e)(1)(C).  The factors trial courts must balance in evaluating a proposed settlement include:

(1) the strength of the plaintiffs' case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010). Here, the factors weigh heavily in favor of granting preliminary approval. As detailed below, these factors weigh heavily in favor of granting final approval.

### A.    The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations Among Experienced Counsel.

This matter settled after two mediation sessions with an experienced mediator, with both sides represented by experienced counsel. The proposed Settlement was the product of arm's-length, hard-fought negotiations, including these mediations and further negotiations. (Desai Decl. ¶ 2; *see also Satchell v. Fed. Exp. Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Court should easily find that this Settlement is an arm's-length deal among capable counsel experienced in similar litigation, and therefore entitled to a presumption of fairness. *See, e.g., White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009).

### B.    The Court Should Weigh the Strength of Plaintiff's Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and Risk of Maintaining Class Status Through Trial.

While Plaintiff is confident in the strength of his claims and those of the class, the claims are not without risk. Some uncertainty remains as to whether the class

claims would receive and maintain certification, and whether Readers could prove their claims.

First, Defendant indicated that it would contest class certification. Defendant would likely have argued that there were differences among the Readers, possibly connected to the amount of their work, or where they performed service. Even if the Court eventually granted class certification, such a decision may have drawn an appeal under Federal Rule of Civil Procedure 23(f).

Further, if Plaintiff succeeded in obtaining certification, he would need to prove that he and the class were misclassified as independent contractors, Defendant improperly deducted from their wages, failed to reimburse for business expenses, and failed to pay for all their time worked. Defendant contends that it operated a referral platform, and that it was not in the business of providing psychic advice, such that the Readers could properly be treated as independent contractors, and contends that it paid Readers lawfully. If Plaintiff established liability, Plaintiff would need to prove Defendant's alleged violations were willful for maximum recovery. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (defining willfulness standard under Labor Code § 203); *see Naranjo v. Spectrum Security Servs., Inc.*, 15 Cal.5th 1056 (2024) (explaining that claims under Cal. Lab. Code § 226 are subject to a good faith defense). Defendant successfully asserting a good-faith defense could bar Plaintiff's claims under California Labor Code sections 203 and 226, and eliminate the collective's liquidated damages.

The uncertainty of contested litigation, trial and appeals also support approval of the settlement here. There is a risk that Plaintiff's claims could have been reduced or eliminated on dispositive motions or at trial; even if Plaintiff prevailed at trial, post-judgment appeals could follow. Plaintiff is cognizant of outcomes like *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007), which culminated after over 5 years of litigation in a Ninth Circuit reversal of a $52.5 million verdict for the plaintiffs. *See also Rodriguez v. W. Publ'g Corp.*, 563

15

F.3d 948, 966 (9th Cir. 2009) ("While Objectors point out that much heavy-lifting had already been done, a number of serious hurdles remained—*Daubert* motions, [defendant's] anticipated motion for summary judgment, and a motion to bifurcate. Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement.").

The risks of continued litigation support settlement approval here.

### C.    The Amount Offered in Settlement Weighs Strongly in Favor of Approval.

The Settlement will provide Class Members with significant up-front payments. If all eligible Class Members participate in the settlement, the average payment per Class Member will be approximately $29,750, ranging from $476 to $171,000, all *after* deductions for an amount for the state for PAGA claims and attorneys' fees and costs. (Desai Decl. ¶ 9.)

The settlement allocation reflects a very good result compared to possible results in litigation. The settlement allocation is fair and reasonable because it is based on individual earnings and work history, meaning it gives the greatest payment to workers with the largest potential claims, and uses uniform assumptions. Class Counsel calculated damages for all Class Members based on Defendant's records, using individualized records of each Class Member's sessions worked and associated compensation and deductions. Importantly, Plaintiff's Counsel reviewed and analyzed data for all Class Members prior to mediation. (Desai Decl. ¶ 4.) Armed with this data, Class Counsel was able to analyze potential damages in conjunction with the risk of loss to Class Members.

As explained in further detail in Counsel's declaration at preliminary approval, the reasonable value of the claims based on the data (i.e., deduction of platform fees and unpaid time based on session time) is approximately $1,012,050.84. (ECF No. 47-1, Brome Decl. ¶ 6.) Accordingly, the $951,777.00 Net Settlement Fund results in approximately 94% of those damages. Adding on discounted California waiting time

and wage statement penalties and a uniform assumption for reimbursement of business expenses to the full value of the unpaid time (the 3 minutes of free time and sessions where the Class Member was not paid for the some or all of the session and the platform fees) yields each Class Member's pro rata allocation representing approximately 62% of their assessed damages. (Desai Decl. ¶ 11.) Separately, Class Members will receive a PAGA allocation equal to their pro rata share of the total disbursable PAGA balance ($6,500). This is a strong result, and favors approval. *See McEvoy*, 2025 WL 1882846, at *7 (independent contractor settlement worth approximately 14% of maximum possible damages supported approval); *Arrellano v. XPO Port Serv. Inc.*, 2021 WL 6882163, at *4 (C.D. Cal. Oct. 8, 2021) (independent contractor settlement amounting to 18.2% of damages sought was reasonable and adequate and supported preliminary approval).

### D.    The Extent of Discovery Completed and the Stage of the Proceedings also Favors Preliminary Approval.

While the Parties have not begun formal discovery, Defendant provided substantial data regarding class members' work and pay history, including detailed pay records for the Named Plaintiff and the other Readers. (Desai Decl. ¶ 4.) The Parties engaged in arms-length negotiations with enough evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. This amount of discovery and the calculations based on complete payroll data supports the finding that the Settlement is fair and reasonable. *See Nelson v. Avon Products, Inc.*, 2017 WL 733145, at *4 (N.D. Cal. Feb. 24, 2017) (noting that formal discovery is not required, and finding class counsel was "in a strong position to evaluate their case and conclude that settlement was the best way forward" where counsel had "obtained Avon's payroll information for a portion of the Class").

### E.    The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

17

As noted above and in Class Counsel's Motion for Attorneys' Fees and Costs, filed concurrently with this Motion, Class Counsel have extensive experience in nationwide wage and hour litigation and believe the settlement is fundamentally fair, adequate, and reasonable. (Desai Decl. ¶¶ 7-8, 12.) This settlement agreement is the result of arm's-length negotiations, between experienced counsel representing the interests of Plaintiff and the Class and Defendant, facilitated by a skilled employment law mediator, after thorough factual and legal investigation and analysis.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also Rodriguez*, 563 F.3d at 965 ("we put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.").

## F.    The Reaction of the Class Members to the Proposed Settlement.

Class Counsel has not received any objections or opt-outs as of the date of this motion. After the December 22, 2025 deadline, Plaintiff will report to the Court whether there were any opt-outs or objectors.

## G.    The Presence of a Government Participant.

There has been no government participant in this case. Plaintiff exhausted their PAGA claim with the LWDA, and the LWDA chose not to intervene or otherwise take any action in this case. (ECF No. 47-1, Brome Decl. ¶ 11). Plaintiff filed the settlement agreement with the LWDA in conjunction with filing this motion. (*Id*. ¶ 12.)

## V.    THE PAGA SETTLEMENT WARRANTS APPROVAL

The PAGA portion of a settlement must be reviewed and approved by the Court. Cal. Lab. Code § 2699(l)(2). Neither PAGA nor state law squarely address the standard of review for PAGA claims. *See, e.g. Flores v. Starwood Hotels & Resorts Worldwide, Inc*. 253 F.Supp.3d. 1074, 1075 (C.D. Cal. 2017) ("[N]either the California legislature, nor the California Supreme Court, nor the California Courts of

18

Appeal, nor the California Labor & Workforce Development Agency (LWDA)" has definitively addressed the standard of review for PAGA). "[C]lass action requirements . . . need not be met when an employee's representative action against an employer is seeking civil penalties under [PAGA]." *Arias v. Sup. Ct.*, 46 Cal.4th 969, 975 (2009). PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval. *Nordstrom Com'n Cases,* 186 Cal.App.4th 576, 589 (2010).

Here, the PAGA penalties flow from the alleged underlying Labor Code violations. Additionally, the time period covered by the PAGA claim is entirely covered by the time covered by the Labor Code claims. As a result, all the aggrieved employees are also class members. It is therefore very reasonable to allocate a small portion of the total settlement to PAGA. *See Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (approving settlement where PAGA allocation represented between .27% - 2% of PAGA exposure, explaining "the Court's analysis of the settlement of the PAGA claim is informed by broader principles . . . and the significant recovery for the Rule 23 class, which suggests that the settlement is within the range of reasonableness.")

Here, the $10,000 PAGA allocation represents 1.7% of the estimated full value of the PAGA claims as calculated at mediation, and .7% of the gross settlement amount. (ECF No. 47-1, Brome Dec. ¶ 7). This is more than the portions that are routinely approved in other hybrid class and PAGA actions. *See, e.g.*, *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims, and explaining "settlement of the PAGA claim may be substantially reduced below its standalone settlement value without sacrificing its statutory purposes because the non-PAGA settlement is relatively substantial."); *Boyd*, 2014 WL 6473804, at *8 (approving PAGA penalties worth 0.32% of gross

settlement); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

## **CONCLUSION**

For all the reasons stated above, the Court should grant Plaintiff's Motion for Final Approval.

Dated: December 10, 2025

**NICHOLS KASTER, PLLP**

By:*/s/Reena I. Desai*
Reena I. Desai

Attorneys for Plaintiff and Others Similarly Situated

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL—CASE NO. 2:24-cv-08887-SK

## **L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,210 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 10, 2025                    By:/s/*Reena I. Desai*
                                            Reena I. Desai