UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION – LOS ANGELES

ALBERT SIMIC, )
)
Plaintiff, )
)
vs. ) Case No. 2:24-CV-08887-SK
)
KASAMBA, INC., ) Los Angeles, CA
) January 7, 2026
Defendants. ) (10:24 a.m. to 10:45 a.m.)
____________________________)

MOTION HEARING
BEFORE THE HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES: See Next Page

COURT REPORTER: Recorded, CourtSmart

COURTROOM DEPUTY: Connie Chung

TRANSCRIBER: Dorothy Babykin
Courthouse Services
1218 Valebrook Place
Glendora, California 91740
(626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

APPEARANCES:

FOR PLAINTIFF ALBERT SIMIC:

NICHOLS KASTER LLP
BY: REENA I. DESAI
ATTORNEY AT LAW
4700 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MINNESOTA 55402

FOR DEFENDANT KASAMBA, INC.:

BAKER MC KENZIE
BY: PHILLIP ROBERT DI TULLIO
ATTORNEY AT LAW
10250 CONSTELLATION BOULEVARD
SUITE 1850
LOS ANGELES, CALIFORNIA 90067

I N D E X

2:24-CV-08887-SK JANUARY 7, 2026

PROCEEDINGS: MOTIONS HEARING

LOS ANGELES, CALIFORNIA; JANUARY 7, 2026; 10:24 A.M.

THE CLERK: CALLING CASE NUMBER CV 24-8887, ALBERT SIMIC VERSUS KASAMBA.

COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

MS. DESAI: GOOD MORNING, YOUR HONOR.

THIS IS REENA DESAI FROM NICHOLS KASTER REPRESENTING PLAINTIFF IN THE CLASS.

MR. DI TULLIO: GOOD MORNING, YOUR HONOR.

PHILLIP DI TULLIO, BAKER MC KENZIE, REPRESENTING DEFENDANT.

THE COURT: OKAY. GOOD MORNING.

AND YOU CAN STAY SEATED. JUST MAKE SURE YOU TALK INTO THE MICROPHONE.

SO, TWO MATTERS ARE PENDING BEFORE ME.

ONE IS THE MOTION FOR FINAL APPROVAL OF THE CLASS AND PAGA SETTLEMENT, WHICH I HAVE ALREADY PRELIMINARILY APPROVED.

AND, THEN, AS PART OF THAT WE SHOULD ADDRESS THE ONE OBJECTOR'S ARGUMENTS AS PART OF THE FAIRNESS HEARING TODAY.

AND, THEN, THE LAST IS THE UNOPPOSED MOTION FOR ATTORNEY'S FEES AND COSTS PROVIDED THAT THAT -- SO, SUBJECT TO A FEW QUESTIONS THAT I HAVE PROBABLY MOSTLY OF YOU, MS. DESAI, BUT THEN MAYBE DEFENSE COUNSEL AS WELL, UNLESS I GET WILDLY UNEXPECTED ANSWERS FROM THE QUESTIONS THAT I'M GOING TO ASK, YOU KNOW, MY INTENT WOULD BE TO OBVIOUSLY GRANT FINAL

APPROVAL OF THE SETTLEMENT AS WELL AS TO GRANT THE UNOPPOSED MOTION FOR FEES.

AND AS PART OF THAT WE OBVIOUSLY NEED TO JUST DEAL WITH THE OBJECTOR'S RESPONSES.

I SHOULD NOTE FOR THE RECORD THAT THE OBJECTOR INDICATED THAT SHE WOULD NOT BE SHOWING UP AND CONFIRMING THAT THERE IS NO OBJECTOR HERE AT THE HEARING TODAY.

MS. DESAI, COULD I JUST START WITH YOU. JUST A FEW THINGS I WANT TO GET CLARIFIED.

BETWEEN A COUPLE OF THE DIFFERENT PLEADINGS THERE WAS A MINOR VARIANCE ON THE EXACT NET SETTLEMENT AMOUNT.

MS. DESAI: YES.

THE COURT: I JUST -- BUT SOME THINGS -- SO, IT WAS A LITTLE OVER A MILLION.

AND WHEN THERE'S -- A LITTLE UNDER 900,000.

I PROBABLY COULD HAVE FIGURED OUT WHERE THE DISCREPANCY WAS. BUT CAN YOU JUST CLARIFY THAT --

MS. DESAI: YES, HAPPY TO.

THE COURT: -- FOR ME.

YEAH. YEAH.

MS. DESAI: WE HELD BACK $50,000 AS A CONTINGENCY FUND.

THE COURT: OKAY.

MS. DESAI: AND WE ENDED UP NOT USING ANY OF IT.

AND, SO, WHAT WE DID IS WE REALLOCATED IT WHICH IS WHY IT WENT -- BUMPED UP TO OVER A MILLION.

THE COURT: OKAY. SO, IT'S A GOOD THING FOR THE CLASS MEMBERS.

MS. DESAI: IT'S A GOOD THING, YES.

THE COURT: OKAY. GOT IT. GOT IT.

ALL RIGHT. SO, THE ONE MILLION SLIGHTLY PLUS IS THE ACTUAL NET SETTLEMENT AMOUNT WE'RE DEALING WITH?

MS. DESAI: CORRECT.

THE COURT: OKAY. GOT IT.

ON THE NOTICE TO THE -- I'M GOING TO SAY 32. BUT I REALIZE ONE OF THEM IS THE – THE REPRESENTATIVE PLAINTIFF.

BUT ON THE 31 REMAINING CLASS MEMBERS, ON THE NOTICE SIDE OF THINGS, IT SOUNDS LIKE YOU'VE DONE EVERYTHING THAT YOU CAN.

BUT IS IT – DO WE HAVE SOME KIND OF – WELL, LET ME ASK YOU THIS WAY.

WHAT'S THE PROCESS BY WHICH – DO THEY STILL NEED TO FILE CLAIMS OR -- TO THEIR KNOWN ADDRESSES, ET CETERA ONCE THE SETTLEMENT IS APPROVED AND THEN THE FUNDS ARE MADE IN THOSE TWO INSTALLMENTS, ARE THOSE CHECKS JUST GOING TO BE ISSUED AND JUST SENT OUT TO THEIR KNOWN ADDRESS?

OR DOES IT HAVE TO BE ANOTHER AFFIRMATIVE ACT FROM THE -- FROM THE CLAIMANTS?

MS. DESAI: THERE'S NO AFFIRMATIVE ACT IN THIS CLASS –

THE COURT: OKAY.

MS. DESAI: -- ACTION, RIGHT.

THE COURT: RIGHT.

MS. DESAI: SO, WE WILL BE SENDING THE CHECKS TO THE ADDRESSES THAT WE HAVE ON RECORD.

THE COURT: SO, FOR EVERYONE EXCEPT FOR MAYBE -- I MEAN, THE OTHER ONES BY THEIR SILENCE AND NO BOUNCE-BACKS, NO RETURN DELIVERABLE MAIL, WE HAVE NO REASON TO THINK THAT THEY WON'T GET THE FUNDS.

THERE'S I GUESS THREE THAT MAYBE THERE'S SOME QUESTION ABOUT HAVE YOU SINCE THEN GOTTEN ANY FURTHER CONFIRMATION THAT THEY -- YOU KNOW, OR ANY REASON TO THINK CONSTRUCTIVELY THAT -- THAT THEY WOULD HAVE GOTTEN NOTICE AT THIS POINT OR ANY REASON TO DOUBT THE LAST THREE?

MS. DESAI: SO, FOR ONE OF THE THREE WE DID GET CONFIRMATION --

THE COURT: OKAY.

MS. DESAI: -- THAT SHE RECEIVED THE NOTICE.

THE COURT: ALL RIGHT.

MS. DESAI: SO, THEN, THAT LEAVES JUST THE TWO.

THE COURT: RIGHT.

MS. DESAI: AND WE TEXTED, EMAILED, SENT TO THE NEW MAILING ADDRESS AS WELL.

THE COURT: GOT IT.

MS. DESAI: BUT WE HAVE NOT AFFIRMATIVELY HEARD BACK FROM THEM.

THE COURT: BUT YOU ALSO DIDN'T GET ANYTHING BOUNCED

BACK INDICATING THAT THERE WAS A PROBLEM WITH ONE OF THOSE CHANNELS OF COMMUNICATION?

MS. DESAI: CORRECT.

THE COURT: OKAY.

AS FOR THOSE LAST TWO, DO YOU HAVE ENOUGH INFORMATION TO TELL ME ARE THEY ON THE HIGH END OF THE RANGE OF ALLOCATION?

OR ARE THEY IN THE MIDDLE?

THE LOW?

MS. DESAI: SO, ONE IS 2,700.

THE COURT: UH-HMM.

MS. DESAI: SO, THEY'RE ON THE LOWER SIDE.

THE COURT: OKAY.

MS. DESAI: AND THEN ONE IS 22,000.

SO 0--

THE COURT: MEDIUM.

MS. DESAI: MEDIUM TO LOWER. YES.

THE COURT: OKAY. GOT IT.

BUT -- AND IF FOR SOME REASON THOSE CHECKS DON'T GET CASHED OR WHATNOT, WHAT HAPPENS?

MS. DESAI: SO, UNDER THE SETTLEMENT AGREEMENT, IF THERE'S MORE THAN A HUNDRED THOUSAND DOLLARS IN UNCASHED CHECKS CUMULATIVELY, THERE WOULD BE A THIRD DISTRIBUTION TO ALL CLASS MEMBERS.

SO, WE HAD THAT LITTLE -- THAT THRESHOLD JUST IN CASE.

THE COURT: UH-HMM.

MS. DESAI: UNDER A HUNDRED THOUSAND DOLLARS WILL BE DONATED TO THE SITE PRAY THAT WE DESIGNATED.

THE COURT: OKAY. OKAY. GOT IT.

OKAY. SO, THAT WOULD MEAN THE VAST MAJORITY OF THESE FOLKS WOULD – YOU KNOW, ASSUMING THAT THEY'VE UPDATED THEIR INFORMATION.

DO YOU HAVE ANY REASON TO THINK THAT THEIR FORMER -- I GUESS, THIS IS – THIS IS THE KIND OF JOB THAT'S HARD TO KNOW WHO IS FORMER AND CURRENT.

BUT AS BEST AS YOU CAN TELL AMONG THE 31 MEMBERS, ARE THEY ALL KIND OF STILL DOING THIS? OR ARE THEY ALL -- SOME OF THEM FORMER -- THAT THEY'RE STOPPED.

MS. DESAI: LAST WE LOOKED THERE WERE ABOUT 18 CURRENT EMPLOYEES.

THE C0URT: OKAY.

MS. DESAI: OR WORKERS.

(LAUGHTER.)

THE COURT: RIGHT. RIGHT. RIGHT. RIGHT.

AND, SO, THE OTHERS MIGHT BE FORMERS, ET CETERA.

OKAY.

MS. DESAI: RIGHT.

THE COURT: ALL RIGHT.

SO THEN -- THAT ANSWERS MY QUESTIONS ON THAT.

ANYTHING ELSE WITH RESPECT -- BEFORE WE GET TO THE OBJECTORS.

I MEAN, I THINK ALL THE OTHER INFORMATION THAT YOU'VE PUT ON THE PAPERS I AGREE WITH. I'VE ADOPTED AND WILL REINCORPORATE MANY OF THOSE THINGS ON THE RECORD HERE. AND THEN OBVIOUSLY IN THE FINAL ORDER RECONFIRMING THAT THE CLASS HAS BEEN PROPERLY CERTIFIED.

WE'LL GO THROUGH THE FAIRNESS FACTORS HERE IN JUST A MINUTE.

I THINK THE NOTICE HAS ALL BEEN ADEQUATELY DONE.

AND I'LL ADD A FEW OF MY OWN THOUGHTS ON WHY I THINK THIS IS FAIR AND REASONABLE.

BUT LET'S ADDRESS THE OBJECTOR'S ISSUES ON THE RECORD SINCE THAT'S SOMETHING NEW AND WE DO NEED TO RESOLVE --

MS. DESAI: SURE.

THE COURT: -- BEFORE I MOVE ON.

NOW, IS THERE ANYTHING ELSE YOU WANTED TO ADD?

MS. DESAI: TO THE OBJECTORS?

THE COURT: NO, NO, NO, NO.

MS. DESAI: OH.

THE COURT: BEFORE WE GET TO THE OBJECTORS.

MS. DESAI: NO. NO, NO, NO.

THE COURT: OKAY.

MS. DESAI: OKAY.

THE COURT: OKAY. SO, AS I UNDERSTAND IT, FROM THE OBJECTOR'S BOTH REVISED AND INITIAL WRITTEN OBJECTION -- WHICH I HAVE RECEIVED AND CAREFULLY EVALUATED -- AND I'VE ALSO READ

YOUR RESPONSE TO IT, LET ME SORT OF TAKE IT IN REVERSE.

ONE OF THEM IS THAT SHE SEEMS TO BE TAKING ISSUE WITH THE FACT THAT THERE ISN'T SOME SORT OF A PROSPECTIVE INJUNCTIVE RELIEF COMPONENT PARTICULARLY WITH RESPECT TO SOME KIND OF A NEW MAYBE FLAT FEE ARRANGEMENT THAT THE DEFENDANT IS DOING EFFECTIVE LATER THIS YEAR ACTUALLY.

I MEAN, I THINK THAT ONE IS OBVIOUSLY EASILY ADDRESSED.

IF THERE IS SOME PROBLEM WITH THAT, NOTHING PREVENTS HER OR ANYONE ELSE FROM SUING ABOUT THAT IF THERE IS SOMETHING UNLAWFUL ABOUT THAT, RIGHT?

MR. DESAI: THAT'S RIGHT.

THE COURT: OKAY.

THE INEQUITABLE DISTRIBUTION PART, I WAS A LITTLE PUZZLED BY THIS BECAUSE EVEN USING THE CAPS THAT SHE WAS USING, LIKE, IF IT WAS A HUNDRED THOUSAND OR A 150,000 IF SHE WAS SAYING WOULD BE A CAP, WHERE WOULD SHE HERSELF FALL WITHIN THAT CAP? -- BELOW OR ABOVE IT.

MS. DESAI: SO, HER ALLOCATION IS AROUND $32,000.

THE COURT: OKAY. SO, I MEAN, IT WOULDN'T AFFECT HER ONE WAY OR THE OTHER. SHE'S PURPORTING TO SPEAK FOR THOSE WHO MIGHT OTHERWISE HAVE SOME AMOUNT ABOVE THAT OR WITHOUT THE CAP --

I'M NOT SURE WHAT SHE'S SAYING. SHE'S SORT OF SAYING THAT THERE ARE SOME PEOPLE THAT ARE JUST GETTING PAID MORE THAN MAYBE THEY SHOULD.

MS. DESAI: AS I UNDERSTAND IT, SHE THINKS THERE SHOULD BE A -- JUST BASED ON HER WRITTEN OBJECTION --
THE COURT: RIGHT.
MS. DESAI: -- THAT THERE SHOULD BE A CAP SO THAT THAT EXTRA MONEY -- SO SAY SOMEONE – SAY THE CAP WAS A HUNDRED AND SOMEONE WAS ISSUING 150 --
THE COURT: RIGHT.
MS. DESAI: -- THAT 50,000 WOULD BE REALLOCATED TO THOSE --
THE COURT: RIGHT.
MS. DESAI: -- WHO ARE UNDER THE CAP --
THE COURT: BUT ASSUMING --
MS. DESAI: -- SO SHE WOULD GET MORE.
THE COURT: -- WE USE EVEN HER 150 CAP, HOW MANY PEOPLE IN THE 32 NUMBER CLASS WOULD EVEN GO BELOW THAT?
MS. DESAI: SO, THERE ARE THREE PEOPLE IN THE SIX-FIGURE --
THE COURT: OKAY.
MS. DESAI: -- RANGE.
AND THAT'S BECAUSE THE DATA THAT WE USED --
THE COURT: SURE.
MS. DESAI: -- TO EVALUATE SHOWED A LOT OF UNPAID TIME.
THE COURT: BUT HOW MUCH MORE OR ABOVE -- LIKE LET'S SAY IF WE HAD A SET A CAP AT A HUNDRED THOUSAND, HOW MUCH MORE WOULD THESE PEOPLE BE GETTING?
MS. DESAI: SO, THERE'S 110, 165 AND THEN 180. THOSE ARE

THE THREE ALLOCATIONS ABOVE 100,000.

THE COURT: RIGHT.

MS. DESAI: SO --

THE COURT: SO, GIVING HER THE BENEFIT OF THAT, THE BEST CASE FOR THIS ARGUMENT IS WHAT EXACTLY THAT IF WE SET IT AT A HUNDRED THOUSAND LIKE SHE'S PROPOSING FOR EXAMPLE ON THE LOWER END, YES, NO DOUBT SHE WOULD GET MORE BECAUSE THEN MORE WOULD BE ALLOCATED TO THE OTHERS.

BUT WHY DOES THAT – I'M NOT QUITE UNDERSTANDING. AND MAYBE YOU DON'T UNDERSTAND EITHER -- WHAT THE EQUITY ARGUMENT EXACTLY WOULD BE GIVING HER EVERY BENEFICIAL INFERENCE OF THE ARGUMENT.

MS. DESAI: I – I DON'T UNDERSTAND EITHER.

I THINK A CAP WOULD BE ARBITRARY IN THIS CASE AND WOULD ACTUALLY BE INEQUITABLE TO --

THE COURT: RIGHT.

MS. DESAi: -- TO CLASS MEMBERS.

THE COURT: OKAY. YEAH.

I MEAN, ANY OTHER -- I MEAN, IT'S NOT LIKE THERE'S ANY OTHER FORMULA. WE COULD CERTAINLY JUST DIVIDE IT BY 32, THE TOTAL AMOUNT. AND THEN YOU HAVE PEOPLE BEING WILDLY OVERPAID AND SOME PEOPLE BEING -- OR PROBABLY EVERYONE WOULD GET -- YEAH, AND THEN SOME PAID WOULD BE OVERPAID.

I MEAN, IT'S --

MS. DESAI: RIGHT. AND IN THIS TYPE OF WORKER CONTEXT,

YOU HAVE TO CONSIDER HOW LONG THEY WORKED THERE FOR.

THE COURT: YEAH.

MS. DESAI: AND DIFFERENT TYPES OF INDIVIDUALIZED --

THE COURT: YEAH. IN FACT, I THINK THAT'S WHAT --

MS. DESAI: -- ISSUES.

THE COURT: -- ADDS TO THE FAIRNESS OF THE -- OF THE SETTLEMENT VERSUS THE IDEA THAT IT WILL BE ARBITRARILY SET AT SOME NUMBER THAT'S DIVIDING THE CLASS MEMBERS BY A SETTLEMENT AMOUNT.

OKAY.

MS. DESAI: YES.

THE COURT: SO, THAT SECOND OBJECTION IS ONE.

THE FIRST ONE, THE ONLY PART THAT I WAS A LITTLE UNCLEAR ABOUT IS I'M NOT SURE WHAT SHE MEANS ABOUT -- AND MAYBE I NEED MR. DI TULLIO TO ADDRESS THIS ONE.

THIS THING ABOUT SHE'S GETTING AUTOMATICALLY LOGGED OFF OF THE PLATFORM. AND THAT'S CAUSING HER TO HAVE MORE WAITING TIME OR MORE WORK TIME THAT SHE NEEDS TO -- I THINK THERE WAS JUST A QUESTION AS TO WHAT THAT MEANS.

BUT DO YOU KNOW TECHNOLOGICALLY WHAT SHE'S EVEN REFERRING TO?

MR. DI TULLIO: SHE -- MY UNDERSTANDING IS SHE'S REFERRING TO AN UNAVAILABILITY. SHE'S BEING MADE TO LOOK UNAVAILABLE AFTER A CERTAIN PERIOD OF IDLENESS.

THE COURT: BUT THAT'S NORMAL, RIGHT. I MEAN, RIGHT.

MR. DI TULLIO: YEAH.

THE COURT: BUT THEN IF – MEANING THEN IF SOMEBODY CAME IN AND WANTED A READING RIGHT THEN, SHE WOULDN'T SHOW UP AS ONE OF THE PEOPLE THAT WOULD BE AVAILABLE?

MR. DI TULLIO: THAT'S MY UNDERSTANDING.

THE COURT: OKAY.

MR. DI TULLIO: THAT'S CORRECT.

BUT I BELIEVE THE TIME IS FAIRLY SIGNIFICANT TO BE TURNED TO IDLE.

THE COURT: UH-HUH.

HOW MUCH?

MR. DI TULLIO: IN WHICH CASE – IT'S HOURS I BELIEVE.

THE COURT: OKAY.

MR. DI TULLIO: AT WHICH CASE, YOU KNOW, SHE'S -- SHE'S NOT REALLY ON THE PLATFORM FOR A SIGNIFICANT PERIOD OF TIME.

THE COURT: RIGHT. BUT I GUESS HOW DOES THAT WORK? I DON'T UNDERSTAND FOR THESE READERS.

IF THEY WANTED TO SORT OF LET'S SAY WORK AN EIGHT-HOUR A DAY AND BE AVAILABLE FOR READINGS DURING THAT PERIOD OF TIME.

ARE YOU SAYING LIKE AFTER FOUR HOURS SHE'D ESSENTIALLY BECOME INACTIVE, IN WHICH CASE IF SOMEBODY CAME IN THE LAST HALF OF THE DAY, SHE WOULDN'T BE ONE THAT WOULD BE QUEUED UP TO RESPOND?

MR. DI TULLIO: YEAH. I WOULD EQUATE IT SIMILAR TO BEING, YOU KNOW, A RECEPTIONIST STEPPING AWAY FROM HER DESK.

THE COURT: UH-HUH.

MR. DI TULLIO: YOU KNOW, YOU CAN'T ANSWER THE PHONE IF YOU'RE NOT THERE.

THE COURT: OKAY.

MR. DI TULLIO: AND, YOU KNOW, AFTER A COUPLE OF HOURS, YOU KNOW, I'D ARGUE THAT AT THAT POINT YOU'RE NOT WORKING.

THE COURT: OKAY. GOT IT. GOT IT.

OKAY. BUT THAT'S WHY SHE'S SAYING THAT IN ORDER FOR HER TO THEN -- BUT REALLY THEN THE ONLY ISSUES IS WHETHER THAT HER HAVING TO SORT OF GET – REACTIVATE, MOVE THE MOUSE, DO ANYTHING TO IN ORDER TO GET BACK INTO ACTIVE STATUS, THAT HAVING TO DO THAT PREVENTS HER FROM DOING OTHERS THINGS THAT YOU WOULD OTHERWISE DO ON HER OWN TIME.

RIGHT?

MR. DI TULLIO: YES.

BUT AT THAT POINT SHE'S, YOU KNOW, DOING – DOING THINGS ON HER OWN TIME.

THE COURT: RIGHT, RIGHT, RIGHT.

MR. DI TULLIO: EXACTLY. YEAH.

THE COURT: OKAY.

AND THEN THIS ON-CALL 48-HOUR RESPONSE TIME POLICY, WHAT'S THE OBJECTION THERE?

MS. DESAI: TO BE HONEST I DIDN'T QUITE UNDERSTAND IT.

MR. DI TULLIO: YEAH, I DIDN'T QUITE UNDERSTAND IT.

THE COURT: BUT THIS IS LIKE AN OLD -- IT'S LIKE AN OLD

EMAIL -- IT'S LIKE AN OLD EMAIL SYSTEM --

MR. DI TULLIO: YEAH.

THE COURT: I GUESS YOU'RE SAYING UNDER THE OLD EMAIL SYSTEM YOU HAD TO BE ON-CALL FOR A 48-HOUR WINDOW IF A REQUEST CAME IN. LIKE, SO IF A REQUEST CAME IN AND SAID SOMEBODY WANTS A READING, SHE'D HAVE TO BE ON CALL FOR 48 HOURS – YOU KNOW, SHE HAS UP TO 48 HOURS TO RESPOND TO THAT?

MS. DESAI: THAT'S WHAT I UNDERSTOOD THE OBJECTION TO SAY.

BUT – IN CONNECTION WITH THE ISSUE THAT YOU IDENTIFIED EARLIER –

THE COURT: UH-HMM.

MS. DESAI: -- IS THAT, YOU KNOW, SHE'D HAVE TO HAVE INTERACTION WITH THE PLATFORM TO STAY IDLE. I THINK THOSE WERE THE TWO MAIN OBJECTIONS FOR THAT PART.

THE COURT: AND SHE'S SAYING THAT THAT FULL 48-HOUR PERIOD IS UNPAID TIME?

MS. DESAI: I BELIEVE SO. BUT I'M NOT – I DID NOT QUITE UNDERSTAND THAT PART. I DIDN'T UNDERSTAND IF SHE MEANT THAT SHE LIKED THE EMAIL SYSTEM.

AT FIRST I THOUGHT IT WAS SHE OBJECTED TO THE 48 HOURS BOUNCED TIME.

AND, THEN, I WENT BACK AND THOUGHT, WELL, MAYBE SHE MEANT THAT SHE LIKED THE EMAIL SYSTEM BECAUSE IT ALLOWED HER TO RESPOND IN 48 HOURS.

BUT NOW SHE HAS TO INTERACT MORE WITH THE PLATFORM.

THE COURT: YEAH. I MEAN, IT SEEMED LIKE THAT WOULD BE A MORE FAVORABLE SITUATION TO HAVE 48 HOURS. THEN SHE CAN GET THAT PARTICULAR READING BECAUSE SHE HAS TIME TO DO WHATEVER ERRAND SHE WAS DOING, COME BACK AND GET TO THE READING. VERSUS IF IT WAS JUST LIKE A TWO-HOUR WINDOW, IT MIGHT MAKE HER UNABLE TO STEP ASIDE BECAUSE SHE'S WORRIED THAT SHE'S GOING TO MISS SOMETHING.

MS. DESAI: YES. THAT'S RIGHT.

THE COURT: YEAH.

MS. DESAI: I THINK -- I THINK THAT'S REASONABLE AND A REASONABLE INTERPRETATION. BUT I'M NOT ENTIRELY SURE.

THE COURT: OKAY.

SO, ALL THREE OBJECTIONS WILL BE OVERRULED.

I MEAN ON THE FIRST, IT SEEMS TO ME LIKE IT'S COUNTERINTUITIVE AS TO HOW THESE THINGS WOULD HAVE ACTUALLY RESULTED IN MORE MONEY FOR HER. AND EVEN IF IT HAD, THAT IT'S SOMETHING THAT COULD HAVE BEEN PROVEN IF THIS CASE WERE PURSUED INDIVIDUALLY.

THE SECOND OBJECTION ABOUT SETTING CAPS IS ARBITRARY AND ACTUALLY WOULD BE MORE UNFAIR TO THE CLASS THAN ACTUALLY FAIR.

AND THE THIRD OBJECTION IS ALSO OVERRULED BECAUSE IT HAS NOTHING TO DO – I MEAN, TO THE EXTENT THAT IT HAS MERIT, THERE'S NOTHING THAT WOULD PREVENT HER OR ANY OTHER PLAINTIFF

FROM PURSUING SOMETHING WITH RESPECT TO A NEW POLICY ABOUT – ABOUT A FLAT-FEE STRUCTURE THAT THE DEFENDANT IS USING.

SO, I'VE CAREFULLY CONSIDERED ALL OF THE OBJECTOR'S ARGUMENTS, DISCUSSED IT WITH COUNSEL, AND I FIND THAT THEY ARE ALL OVERRULED. AND THAT THEY WOULD NOT UNDERMINE IN ANY WAY THE FAIRNESS, ADEQUACY AND REASONABLENESS OF THE SETTLEMENT.

YOU KNOW, THE ONLY COMMENTS THAT I'LL ADD TO THE THINGS THAT YOU'VE ALREADY ADDED TO THE PAPERS, AND I'LL LET YOU ALL SUPPLEMENT THE RECORD WITH ANYTHING THAT YOU THINK I MAY HAVE NEGLECTED THAT I SHOULD GO AHEAD AND STATE.

BUT AS I SEE IT, THIS IS AT A NET SETTLEMENT AMOUNT OF A LITTLE BIT OVER $1,000,000. IN A MATTER OF ABOUT A YEAR YOU EFFECTIVELY RESOLVED WHAT WOULD HAVE EASILY OTHERWISE BEEN 32 OTHER INDIVIDUAL CASES IN A MATTER OF A YEAR.

BECAUSE YOU OBTAINED THE DISCOVERY THAT YOU NEEDED TO MAKE INDIVIDUALIZED ASSESSMENTS ABOUT WHAT EACH OF THESE PEOPLE'S REALLY REASONABLE ASSESSED DAMAGES IS.

FRANKLY, THAT EXERCISE IN AND OF ITSELF MIGHT HAVE BEEN A THING THAT COULD HAVE DEFEATED CLASS CERTIFICATION IF YOU HAD ACTUALLY HAD TO MOVE FOR CLASS CERTIFICATION.

HAVING DONE THAT, YOU ASSESSED THE DAMAGES VERY REALISTICALLY AND NOT ARBITRARILY AT SOMETHING CLOSE TO A LITTLE OVER A MILLION DOLLARS. SO WE'RE TALKING ABOUT A NET SETTLEMENT AMOUNT THAT VERY CLOSELY APPROXIMATES WHAT THE ACTUAL DAMAGES WOULD HAVE LIKELY BEEN ANYWAY.

THEN, ON TOP OF THAT, FOR EACH OF THE INDIVIDUAL PLAINTIFFS THERE'S NO CLAIM THAT HAS TO BE FILED. THEY WILL EACH BE GETTING ALMOST A 62-70 PERCENT RECOVERY HAD THEY PURSUED THIS ON THEIR OWN, WHICH THEY DIDN'T HAVE TO. AND THEY INCURRED NO ATTORNEY'S FEES OR ANY OTHER COSTS IN ORDER TO RECOVER THAT. AND THIS IS VERY INDIVIDUALIZED TO EACH OF THE INDIVIDUAL PLAINTIFF'S CLAIMS.

SO, IN THE AMOUNT OF TIME THAT IT TOOK WITH THE AMOUNT OF INFORMAL DISCOVERY THAT YOU ALL DID, EVEN THOUGH THIS DIDN'T NEED TO PROCEED TO FORMAL DISCOVERY, YOU PROCEEDED AS IF IT WERE DONE WITH DISCOVERY. AND YOU USED THAT ACTUAL DATA TO COME UP WITH VERY ACCURATE FIGURES FOR EACH INDIVIDUAL CLAIMANT.

YOU'VE DONE MORE THAN ENOUGH TO MAKE SURE THAT EVERYONE HAS PROVIDED – BEEN PROVIDED NOTICE OF THAT AMOUNT.

AND AS I DISCUSSED, I'VE OVERRULED THE OBJECTIONS OF THE ONE OBJECTOR.

I NOTE ALSO THAT NO OTHER PARTY HAS OPTED OUT INCLUDING THE OBJECTOR. AND WE HAVE NO REASON TO THINK THAT THE 31 MEMBERS DID NOT RECEIVE AN ADEQUATE NOTICE OF THIS.

SO, THE LACK OF OBJECTIONS IS FURTHER EVIDENCE THAT THIS IS A FAIR AND REASONABLE SETTLEMENT.

I'VE ALSO ASSESSED ALL OF THE OTHER COSTS THAT ARE RELATED – THE ADMINISTRATION COSTS, THE ATTORNEY FEE'S COST. AND ALL OF THOSE ARE VERY REASONABLE AS WELL.

AND, FINALLY, THE SERVICE ENHANCEMENT OF $10,000 FOR THE NAMED PLAINTIFF IS -- IS MORE THAN REASONABLE. IT FALLS WELL WITHIN THE BENCHMARK OF SERVICE AWARDS THAT ARE GIVEN TO CLASS PLAINTIFFS IN THIS TYPE OF CASE.

SO, FOR ALL OF THOSE REASONS AND THE OTHER REASONS THAT WILL BE MEMORIALIZED IN WRITING, I WILL JUST MODIFY THE ORDERS A LITTLE BIT TO JUST ADDRESS THE OBJECTOR'S THREE OBJECTIONS AND NOTE THAT THEY'VE BEEN ADDRESSED AND OVERRULED.

BUT OTHER THAN THAT, I FIND THAT THE ENTIRE AMOUNT OF THE SETTLEMENT PROPOSAL IS REASONABLE INCLUDING THE PAGA ELEMENT.

IS THERE ANYTHING ELSE THAT THE PARTIES THINK I SHOULD ADD FOR THE RECORD?

MS. DESAI: NOT FROM PLAINTIFF, YOUR HONOR.

THANK YOU.

MR. DI TULLIO: NO, YOUR HONOR.

THANK YOU.

THE COURT: OKAY.

SO, LIKE I SAID, I'LL TRY TO -- I KNOW THAT GETTING THE SETTLEMENT APPROVED IS THE -- FIRST TRIGGERED ALL THIS.

SO, I'LL TRY TO ADD IN A LITTLE BIT TO THE PROPOSED ORDER JUST DEALING WITH THE RESPONDERS' OBJECTIONS -- THE OBJECTOR'S RESPONSES. AND, THEN, I'LL GET THAT ISSUE AS EXPEDITIOUSLY AS I CAN. HOPEFULLY TODAY OR TOMORROW.

MS. DESAI: ALL RIGHT. THANK YOU, YOUR HONOR.

THE COURT: ALL RIGHT.

SO, THEN, LET'S ADDRESS THE UNOPPOSED FEE MOTION.

I'VE ALSO CAREFULLY REVIEWED ALL OF THIS.

AGAIN, IN SUM, BESIDES THE REASONS THAT ARE ALREADY IN THE BRIEFING WHICH IS ALL -- ADEQUATELY EXPLAINS THIS.

THE AMOUNT OF THE FEE AT 25 PERCENT OF THE GROSS SETTLEMENT AMOUNT IS RIGHT AT THE 25 PERCENT BENCHMARK.

THERE'S NO REASON TO THINK THAT THAT IS IN ANY WAY UNREASONABLE.

I'VE ALSO REVIEWED ALL OF THE TIME SHEETS OF PLAINTIFF'S COUNSEL AND FIND THAT EVEN I HAD USED A LODESTAR CALCULATION, THAT A $350,000 SETTLEMENT WOULD HAVE BEEN EMINENTLY REASONABLE AGAINST A LODESTAR CALCULATION AS WELL.

THE FEES AND THE HOURS – IF ANYTHING, I THINK THEY'RE SLIGHTLY UNDERESTIMATED.

SO, A $350,000 SETTLEMENT FOR THE WORK THAT WAS DONE HERE I THINK IS EMINENTLY REASONABLE.

ON TOP OF THAT, LIKE I SAID, THIS FEELS MORE TO ME LIKE A GREAT SETTLEMENT OF 32 CASES THAN JUST A CLASS SETTLEMENT OF A CLASS. AND SO, WITH THAT, $350,000 IS ACTUALLY ON THE LOW END OF WHAT IT WOULD HAVE TAKEN TO RESOLVE 32 INDIVIDUAL CASES.

AND, SO, I FIND THAT THAT'S VERY REASONABLE.

AND A MULTIPLIER AGAINST A LODESTAR CALCULATION WOULD BE NOT EVEN A 2X. IT WOULD BE A 1.5 OR A 1.7 X, WHICH, AGAIN, EVEN

AGAINST A LODESTAR CALCULATION INDICATES THAT THE $350,000 FEE AMOUNT IS REASONABLE.

AND THAT THERE IS RECORD SUPPORT FOR ALL OF THE OTHER HARD COSTS THAT ARE ALSO SOUGHT INCLUDING ATTORNEYS' COSTS, THE SETTLEMENT ADMINSTRATOR'S COSTS, AND THE OTHER FEES THAT ARE NOTED IN THE MOTION.

SO, UNLESS THE PARTIES HAVE ANYTHING ELSE TO ADD, MY INTENT IS TO GRANT THE MOTION FOR ATTORNEYS' FEES AND COSTS AS WELL.

MS. DESAI: I DO NOT HAVE ANYTHING ELSE.

THANK YOU.

MR. DI TULLIO: NOR I.

THE COURT: OKAY.

ALL RIGHT. SO, THAT WILL BE THE COURT'S ORDER.

I'LL GET THOSE ISSUED OUT AS SOON AS I CAN.

YOU BRAVED L.A. TRAFFIC TO GET HERE. SO, SHOULD WE SPEND ANOTHER FIVE MINUTES TALKING ABOUT ANYTHING ELSE.

MS. DESAI: (LAUGHTER.)

THE COURT: NO?

MS. DESAI: NO. I DON'T THINK SO, YOUR HONOR.

THE COURT: ALL RIGHT.

DID ANYONE HAVE TO TRAVEL OUT OF STATE?

MS. DESAI: I DID. I TRAVELED FROM MINNEAPOLIS.

THE COURT: OKAY.

WELL, HOPEFULLY YOU CAN DO SOMETHING IN L.A. A LITTLE BIT

BEFORE YOU HAVE TO --

MS. DESAI: YEAH. IT'S BEAUTIFUL. BEAUTFUL WEATHER. IT'S BETTER THAN THE 30 DEGREES THAT I'M FLYING HOME TO.

THE COURT: YEAH. ENJOY IT. BECAUSE WE'VE HAD A LOT OF RAIN. AND, SO, ENJOY IT WHILE YOU CAN BEFORE YOU HAVE TO HEAD BACK.

ALL RIGHT. WELL, COUNSEL, THANK YOU VERY MUCH FOR ALL YOUR GREAT WORK ON THIS. IT WAS A PLEASURE TO HANDLE ALL YOUR BRIEFS AND THINGS. AND I DO APPRECIATE THE WORK YOU DID TO GET A GREAT RESULT FOR BOTH CLASS AND FOR YOUR CLIENT.

MS. DESAI: THANK YOU. THANK YOU FOR YOUR TIME.

THE COURT: THANK YOU.

MR. DI TULLIO: THANK YOU SO MUCH, YOUR HONOR.

THE CLERK: COURT'S IN RECESS.

(PROCEEDINGS ADJOURNED AT 10:45 A.M.)

## TRANSCRIBER'S CERTIFICATE

## DISCLAIMER

THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

I, Dorothy Babykin, attest that the foregoing proceedings provided to me electronically were transcribed by me to the best of my ability.

/s/ *Dorothy Babykin*

Dorothy Babykin

Date: 6/5/2026